*In re* DETENTION OF RAYMOND TREVINO (The People of the State of Illinois, Petitioner-Appellee, v. Raymond Trevino, Respondent-Appellant).

Second District    No. 2—99—0717

Opinion filed December 4, 2000.—Rehearing denied December 28, 2000.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and William L. Browers, Lisa A. Hoffman, and Margaret M. O'Connell, Assistant Attorneys General, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

Following a jury trial, the respondent, Raymond Trevino, was adjudicated to be a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (the Commitment Act) (725 ILCS 207/1 *et seq.* (West 1998)). On appeal, the respondent argues that (1) section 30(c) of the Commitment Act is unconstitutional; (2) the Commitment Act violates his constitutional right to equal protection under the law; (3) the State failed to prove beyond a reasonable doubt that he was a sexually violent person; (4) he was denied a fair trial as a result of improper questioning and argument by the State; and (5) his commitment was unconstitutional because the jury did not specifically find that he lacked volitional control over his violent criminal behavior. We reverse and remand for further proceedings

## I. Background

The facts relevant to the instant appeal are as follows. On November 4, 1998, the State filed a petition requesting that the respondent be placed in the control, care, and custody of the Department of Human Services (DHS) pursuant to section 15 of the Commitment Act (725 ILCS 207/15 (West 1998)). The petition alleged that, in 1996, the respondent had been convicted of attempted criminal sexual assault (720 ILCS 5/8—4(a), 12—13(a)(1) (West 1996)) and sentenced to six years' imprisonment. The respondent was incarcerated at Taylorville Correctional Center and was scheduled for mandatory supervised release on November 6, 1998. The petition alleged that the respondent had been diagnosed according to the Diagnostic and Statistical Manual of Mental Disorders, fourth edition (DSM-IV), as

suffering from exhibitionism and personality disorder not otherwise specified and that these mental disorders created a substantial probability that the respondent would engage in acts of sexual violence. The petition was accompanied by the written mental health evaluation of Dr. Marc Levinson, a psychologist employed by the Department of Corrections (DOC).

On November 13, 1998, following a hearing, the trial court determined that there was probable cause to conduct further proceedings on the State's petition. See 725 ILCS 207/30 (West 1998). The trial court also ordered that the respondent be transferred to the DHS for an evaluation as to whether he was a sexually violent person. See 725 ILCS 207/30(c) (West 1998). At this time, the respondent's attorney indicated that the respondent would be exercising his right to remain silent pursuant to section 25(c)(2) of the Commitment Act (725 ILCS 207/25(c)(2) (West 1998)) and that he would not speak or cooperate with the State in its preparation for trial. The respondent's attorney also informed the trial court that the respondent would be filing a jury demand and requested the appointment of an independent mental health expert.

In response to this latter request, the State noted that section 30(c) of the Commitment Act prohibited the respondent from introducing any testimony of his own examining mental health expert in the event that he refused to cooperate with the court-ordered DHS evaluation. Section 30(c) of the Commitment Act provides, in relevant part, as follows:

> "If the court determines after a hearing that there is probable cause to believe that the person named in the petition is a sexually violent person, the court shall order that the person be *** transferred within a reasonable time to an appropriate facility for an evaluation as to whether the person is a sexually violent person. If the person named in the petition refuses to speak to, communicate with, or otherwise fails to cooperate with the expert from the [DHS] who is conducting the evaluation, the person shall be prohibited from introducing testimony or evidence from any expert or professional person who is retained or court appointed to conduct an evaluation of the person." 725 ILCS 207/30(c) (West 1998).

The trial court did not rule upon the respondent's request for the appointment of an independent mental health expert at that time.

On January 15, 1999, the respondent filed a motion to declare section 30(c) of the Commitment Act unconstitutional. The respondent argued that the provision impermissibly interfered with his ability to call witnesses and violated his right to due process of law under the federal constitution (U.S. Const., amend. XIV). The respondent also

argued that the Commitment Act violated the equal protection clauses of the federal and state constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) because it afforded fewer rights than other civil commitment statutes.

Following a hearing, the trial court denied the respondent's motion and found that the statute was constitutional pursuant to the United States Supreme Court's decision in *Kansas v. Hendricks*, 531 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997). However, in so ruling, the trial court noted that section 30(c) of the Commitment Act did not preclude a noncooperative respondent from calling an expert witness, but instead precluded the expert from testifying as to any interview or examination that the expert conducted upon the respondent. The trial court therefore granted the respondent's request that Dr. Lyle Rossiter be appointed to evaluate him using only the materials that were reviewed by Dr. Levinson and the information Dr. Levinson obtained during his interview with the respondent in the DOC. Subsequently, the State announced its intention to call Dr. Paul Heaton to testify as to his review of Dr. Rossiter's evaluation. The trial court ruled that Dr. Heaton could be called to testify, but only as a rebuttal witness for the State.

At trial, the State called Officer John Quirin of the Carol Stream police department to testify about the facts that led to the respondent's conviction of attempted criminal sexual assault. The State also called Dr. Levinson, who, as noted above, had interviewed the respondent prior to the probable cause hearing. Dr. Levinson diagnosed the respondent with exhibitionism and personality disorder not otherwise specified with features of antisocial, avoidant, and dependent traits. Dr. Levinson testified to the factual basis of his diagnosis and identified several factors suggesting that the respondent would commit future acts of sexual violence. He concluded that, because of the respondent's mental disorder, a substantial probability existed that the respondent would commit another sexually violent crime.

The respondent's expert witness, Dr. Lyle Rossiter, testified that he had reviewed the same materials as Dr. Levinson and that he had reviewed Dr. Levinson's report. Dr. Rossiter did not interview or examine the respondent. Although Dr. Rossiter agreed that the respondent suffered from exhibitionism and a personality disorder, he did not believe that the respondent was likely to engage in future acts of sexual violence.

The State's expert rebuttal witness, Dr. Paul Heaton, testified that he was an independent clinical psychologist who contracted with the DHS to evaluate individuals for possible detainment pursuant to the Commitment Act. Dr. Heaton testified that he disagreed with Dr. Ros-

siter's opinion and that he believed that the respondent's mental illness made it substantially likely that he would reoffend in a sexually violent manner.

The jury returned a verdict finding the respondent to be a sexually violent person. On May 24, 1999, following the denial of the respondent's posttrial motion, the trial court held a dispositional hearing. At the close of the hearing, the trial court found that the sexually violent persons unit at Sheridan Correctional Center was the least restrictive placement available for the respondent and ordered that he be committed there for treatment. The respondent filed a timely notice of appeal.

## II. Discussion

### A. Constitutionality of Section 30(c)

■ The respondent's first argument on appeal is that section 30(c) of the Commitment Act is unconstitutional. As noted above, that section provides that when the person named in the petition refuses to cooperate with the court-ordered DHS evaluation, "the person shall be prohibited from introducing testimony or evidence from any expert or professional person who is retained or court appointed to conduct an evaluation of the person." 725 ILCS 207/30(c) (West 1998). The respondent argues that the statute unfairly limited his ability to present witnesses and thereby deprived him of a fair trial in violation of the due process clauses of the federal and state constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2). The respondent also argues that section 30(c) violates the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, §1) because it interferes with the trial court's discretion to determine what evidence should be considered by the trier of fact.

### 1. Due Process

This court recently considered a due process challenge to section 30(c) in *In re Detention of Kortte*, 317 Ill. App. 3d 111 (2000). In that case, the respondent refused to participate in the initial DOC evaluation to determine whether the respondent was subject to detention under the Commitment Act. The trial court subsequently found that there was probable cause to conduct further proceedings and ordered the respondent to undergo an evaluation by the DHS. The respondent again refused to participate in the evaluation. Relying on section 30(c) of the Act, the trial court barred the respondent from calling any expert who evaluated him. *Kortte*, 317 Ill. App. 3d at 114.

At trial, the State called two experts who had evaluated the respondent based upon his DOC master file, which contained mental

health evaluations, disciplinary reports, psychiatric notes, treatment reports, and police reports. These experts opined that the respondent's mental illness made it substantially likely that he would commit acts of sexual violence in the future. The respondent offered no evidence. The trial court subsequently found that the respondent was sexually violent and committed him to the custody of DHS. *Kortte*, 317 Ill. App. 3d at 114.

On appeal, this court held that the application of section 30(c) in the respondent's case resulted in a deprivation of due process of law. *Kortte*, 317 Ill. App. 3d at 116. We noted that, although proceedings under the Commitment Act are civil in nature, the Commitment Act provides a respondent with all of the constitutional rights of a criminal defendant, including the right to due process. *Kortte*, 317 Ill. App. 3d at 115, citing 725 ILCS 207/35(b) (West 1998). We held that, in the context of the Commitment Act, due process requires that the respondent be given a fundamentally fair trial. *Kortte*, 317 Ill. App. 3d at 115. We held that the respondent was entitled to defend himself on a "level playing field" and that the State not be permitted to maintain a strategic advantage over the respondent when "that advantage casts a pall on the proceedings." *Kortte*, 317 Ill. App. 3d at 116. We concluded that the respondent in *Kortte* was denied a level playing field because the State had the opportunity to call two nonexamining expert witnesses, while he was barred from calling a nonexamining expert of his own. *Kortte*, 317 Ill. App. 3d at 116.

In so ruling, we declined to hold that section 30(c) was unconstitutional on its face. *Kortte*, 317 Ill. App. 3d at 118. We explained that the intent of the statute was to prevent either the State or the respondent from having an evidentiary advantage and to guarantee that both parties had the opportunity to present evidence substantially equal in character. *Kortte*, 317 Ill. App. 3d at 118. Therefore, we noted that the statute could be constitutionally applied in instances where the respondent's refusal to cooperate results in the State's inability to call *any* kind of evaluating expert. In such a circumstance, section 30(c) fairly prohibits the respondent from calling any expert of his own. *Kortte*, 317 Ill. App. 3d at 118. However, we explained that the application of section 30(c) will often be unconstitutional:

> "[W]e believe that section 30(c) will usually be applied as it was here. In fact, we can foresee an even more egregious scenario in which a respondent submits to the evaluation by the agency that is authorized to release him but, after the court finds probable cause, refuses to cooperate with the DHS expert. In that case, the State could call an *examining* expert at trial, and section 30(c) would still prevent the respondent from calling any expert at all.

\*\*\* If the respondent does not submit to the DHS evaluation but the State still calls an examining expert, the respondent must be permitted to call an examining expert of his own. If the State calls only nonexamining experts, the respondent must be permitted to call one as well." (Emphasis in original.) *Kortte,* 317 Ill. App. 3d at 118.

■ In light of these principles, we agree with the respondent that section 30(c), as it was applied to him, denied him due process by barring him from presenting the testimony of an examining expert to contradict the testimony offered by the State's examining expert. Despite the respondent's refusal to cooperate with court-ordered DHS evaluation, the State was nonetheless able to call Dr. Levinson as an examining expert. Although the trial court permitted the respondent to call a nonexamining expert, the expert's evaluation was limited to a consideration of the materials relied upon by Dr. Levinson. As section 30(c) deprived the respondent of the same opportunity to present an examining expert, we believe that the respondent was not able to defend himself on a level playing field and that his due process rights were violated. *Kortte,* 317 Ill. App. 3d at 118. The application of the statute in the instant case did not accomplish the statute's intended goal that both parties have the opportunity to present evidence substantially equal in character. Rather, the statute operated to deprive the respondent of the same opportunity as the State to present the testimony of an examining expert.

Additionally, we note that the trial court's appointment of an expert to evaluate the respondent utilizing the same materials relied upon by Dr. Levinson was a violation of section 30(c). As noted above, in an instance where the respondent refuses to cooperate with the DHS expert, section 30(c) precludes him from introducing testimony or evidence from any "expert or professional person who is retained or court appointed to conduct an evaluation" of him. 725 ILCS 270/30(c) (West 1998). In *Kortte,* this court interpreted this statutory language as preventing a noncooperating respondent from calling *any* expert of his own, even one who did not examine the respondent personally. *Kortte,* 317 Ill. App. 3d at 116. Therefore, had the trial court correctly applied section 30(c), the respondent would not have been appointed any experts. As noted in *Kortte,* such a circumstance would be an even more egregious violation of due process. *Kortte,* 317 Ill. App. 3d at 118.

For the reasons expressed in *Kortte,* we do not believe that section 30(c) is unconstitutional on its face. However, we do conclude that the statute, as applied in this case, denied the respondent due process of law. Accordingly, we believe that fairness requires that this cause be remanded for a new trial. On remand, the trial court shall appoint an

examining expert on behalf of the respondent. That expert shall be permitted to testify as to the results of any examination of the respondent.

## 2. Separation of Powers

■ The respondent also argues that section 30(c) is facially invalid because it violates the separation of powers clause of the Illinois Constitution. Ill. Const. 1970, art. II, §1. The respondent argues that the statute unconstitutionally deprives the trial court of discretion to determine what evidence should be considered by the trier of fact. This argument is without merit. In *Kortte*, this court also held that section 30(c) does not violate the separation of powers clause. *Kortte*, 317 Ill. App. 3d at 118. We noted that section 30(c) is merely a rule of evidence and the legislature has the power to prescribe rules of evidence. *Kortte*, 317 Ill. App. 3d at 118, citing *People v. Rolfingsmeyer*, 101 Ill. 2d 137, 140 (1984). The enactment of such legislation is not an improper exercise of the judicial power and does not violate the separation of powers clause. *People v. Joseph*, 113 Ill. 2d 36, 43 (1986).

## B. Equal Protection

The respondent next argues that the Commitment Act violates the equal protection clause of the federal and state constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) because it affords fewer rights than are granted to individuals committed under the provisions of the Sexually Dangerous Persons Act (725 ILCS 205/1 *et seq.* (West 1998)). Specifically, the respondent argues that the Sexually Dangerous Persons Act places no limits on the number and frequency of petitions for release that the committed person may file (725 ILCS 205/9 (West 1998)), whereas the Commitment Act allows the filing of such petitions only at the time of the periodic examination required by section 55 (725 ILCS 207/55 (West 1998)). 725 ILCS 207/60, 65(b)(1) (West 1998). The respondent also argues that the Commitment Act violates equal protection because it applies only to those persons convicted of violent sex offenses who received prison sentences and not to persons who were convicted of the same offenses but received terms of probation.

■ The right to equal protection of the laws requires the government to treat similarly situated persons in a similar manner. *In re Detention of Samuelson*, 189 Ill. 2d 548, 561 (2000). Although the equal protection clause does not preclude the State from enacting legislation that draws distinctions between different categories of people, it does prohibit the government from according different treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the

legislation. *People v. Fisher*, 184 Ill. 2d 441, 450 (1998). In considering prior equal protection challenges to the Commitment Act, the Illinois Supreme Court has applied the rational basis test. *Samuelson*, 189 Ill. 2d at 562. Under that test, the court simply inquires whether the stated goal or purpose of the legislation is rationally related to that goal. *Samuelson*, 189 Ill. 2d at 562.

We first turn to the respondent's comparison between the release provisions of the Commitment Act and the Sexually Dangerous Persons Act. Although this court has not considered the precise argument raised by the respondent, it has rejected similar equal protection challenges based upon comparisons between the provisions in these acts. *People v. Coan*, 311 Ill. App. 3d 296, 298 (2000) (treatment provisions); *People v. McDougle*, 303 Ill. App. 3d 509, 523 (1999) (regularity of required psychiatric examinations); *People v. McVeay*, 302 Ill. App. 3d 960, 966-67 (1999) (opportunity to obtain independent psychiatric examination). In each of these cases, we determined that individuals committed pursuant to the Commitment Act and the Sexually Dangerous Persons Act were not similarly situated for purposes of equal protection analysis. See *Coan*, 311 Ill. App. 3d at 298. We have also held that, although certain differences exist in the commitment procedures under the two acts, individuals committed under the Commitment Act are not treated more harshly than those committed as sexually dangerous persons. *McDougle*, 303 Ill. App. 3d at 523.

We see no reason to depart from these authorities in the instant case. Not only are individuals committed pursuant to these two acts not similarly situated, but an examination of the release provisions contained in these statutes demonstrates that those provisions are not dramatically different. As the respondent acknowledges, both acts permit a respondent to file a petition for release at any time. 725 ILCS 207/70 (West 1998). The Commitment Act simply provides that the trial court may dismiss such a petition without hearing if the trial court had previously denied a release petition that had been filed by a respondent without DHS approval. 725 ILCS 207/70 (West 1998). However, the trial court must conduct a hearing on the petition if it "contains facts upon which a court could find that the condition of the person had so changed that a hearing was warranted." 725 ILCS 207/70 (West 1998). Although the committed individual will not receive a psychiatric evaluation every time he files such a petition, we note that the Commitment Act provides for periodic examinations at least annually and requires that the results of these evaluations be reported to the trial court. 725 ILCS 207/55 (West 1998).

Such a statutory scheme conserves judicial resources and guarantees that the progress of the committed individual will be regularly as-

sessed. As such, we do not believe that the Commitment Act treats sexually violent individuals more harshly than those committed under the Sexually Dangerous Persons Act. Rather, we believe that both statutes are rationally tailored to achieve their dual objectives to provide treatment and to protect the public from sexual violence. *McDougle*, 303 Ill. App. 3d at 523.

We also reject the respondent's argument that the Commitment Act violates equal protection because it does not apply to persons who were sentenced to probation following a conviction of a violent sex offense. We initially note that most violent sex offenses carry with them a mandatory term of imprisonment. However, in the few instances where the trial court has the discretion to impose a term of probation, we do not believe that individuals who receive a sentence of probation are similarly situated to those who are sentenced to imprisonment. A sentence of probation may not be imposed in instances where the trial court concludes that imprisonment is necessary for the protection of the public or where a sentence of probation would deprecate the seriousness of the offender's conduct. 730 ILCS 5/5—6—1(a) (West 1998). In making these determinations, the trial court must consider the defendant's criminal history and character. 730 ILCS 5/5—6—1(a) (West 1998). We therefore believe that there will always be distinctions in the character and conduct of an offender who has been sentenced to probation and an offender who has been sentenced to imprisonment.

Additionally, we believe that the legislature has a rational basis for limiting the application of the Commitment Act to those individuals who have been incarcerated for committing violent sexual offenses. These individuals have already committed serious violent sexual offenses or have been incarcerated in order to protect the public. The presence of a serious and ongoing mental disorder in such individuals may present a threat to public safety and provides a rational basis for disparate treatment. Accordingly, we find no equal protection violation.

### C. Sufficiency of Evidence and Improper Questioning and Argument

The respondent's next argument on appeal is that the jury's verdict was against the manifest weight of the evidence. The respondent also argues that he was deprived of a fair trial as a result of improper questioning and argument by the State. However, in light of our determination that this cause must be remanded for a new trial, we need not address these arguments.

### D. Lack of Volitional Control

The respondent next argues that his commitment under the Com-

mitment Act was unconstitutional because the jury did not make a specific finding that he lacked volitional control over his violent criminal behavior. In reliance upon the United States Supreme Court decision in *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), the respondent argues that the State was required to prove that he lacked volitional control over his behavior. The respondent concludes that the trial court's failure to instruct the jury to make a finding of fact on that issue rendered his commitment unconstitutional. Although we are remanding this cause for retrial, we nonetheless consider the merits of this issue as it is likely to arise again on remand.

■ In *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), the Supreme Court considered a Kansas civil commitment statute similar to the Commitment Act. In upholding the constitutionality of the statute, the Supreme Court noted that the mere diagnosis of a mental disorder was insufficient to justify forced hospitalization. Rather, the Court held that civil detainment is proper only in those narrow instances where an individual is unable to control his behavior and therefore poses a danger to the public health and safety. *Hendricks*, 521 U.S. at 357, 138 L. Ed. 2d at 512, 117 S. Ct. at 2079. The Court explained:

"A finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment. We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.' [Citations.] These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control. The Kansas Act is plainly of a kind with these other civil commitment statutes: It requires a finding of future dangerousness, and then links that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior." *Hendricks*, 521 U.S. at 358, 138 L. Ed. 2d at 512-13, 117 S. Ct. at 2080.

■ The respondent argues that the Commitment Act does not comport with the rule established in *Hendricks* because it does not require the jury to make a specific finding that the respondent is unable to control his violent behavior because of his mental disorder. An examination of the language contained in the Commitment Act refutes the respondent's contention. The Commitment Act defines a sexually violent person as an individual who has been convicted of a sexually violent offense and "who is dangerous because he or she suffers from

a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 1998). In conformity with this statutory language, the jury in the instant case was instructed that the State was obligated to prove that the respondent was dangerous because he suffered from a mental disorder that made it substantially probable that he would engage in acts of sexual abuse. We believe that, in order to make such a finding, the jury is necessarily required to conclude that the respondent lacked volitional control over his mental disorder.

Indeed, we note that there is little difference between the language of the Commitment Act and the language in the Kansas statute at issue in *Hendricks*. The Kansas statute defined a "sexually violent predator" as follows:

> "[A]ny person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence." *Hendricks*, 521 U.S. at 352, 138 L. Ed. 2d at 509, 117 S. Ct. at 2077.

The Supreme Court upheld the constitutionality of this language, finding that it sufficiently linked evidence of past sexually violent behavior and evidence of a present mental condition that creates a likelihood of future sexually violent behavior. *Hendricks*, 521 U.S. at 357, 138 L. Ed. 2d at 512, 117 S. Ct. at 2079-80. We can discern no significant difference between the statutory language contained in the Kansas statute and the language contained in the Commitment Act, which is quoted above. We therefore reject the respondent's assertion that the trier of fact is required to make any findings in addition to what is already required by the statute.

## III. Conclusion

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BOWMAN, P.J., and HUTCHINSON, J., concur.