No. 2--99--1266

___________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

___________________________________________________________________

In
 
re
 DETENTION OF JOHN ) Appeal from the Circuit Court 

TITTLEBACH ) of Du Page County.

)

) No. 99--MR--285

(The People of the State of )

Illinois, Petitioner-Appellee, ) Honorable

v. John Tittlebach, Respondent- ) Judge John W. Darrah,

Appellant). ) Judge, Presiding.

___________________________________________________________________ 

  

JUSTICE BYRNE delivered the opinion of the court:

Following a bench trial, respondent, John Tittlebach, was adjudicated to be a sexually violent person pursuant to the Sexually Violent Persons Commitment Act (the Commitment Act) (725 ILCS 207/1 
et
 
seq.
 (West 1998)).  On appeal, respondent argues that (1) the State failed to prove beyond a reasonable doubt that he was a sexually violent person; (2) the trial court failed to provide a statutorily required hearing prior to ordering respondent committed to a secure facility; and (3) his commitment was unconstitutional because the trial court did not specifically find that he lacked volitional control over his violent criminal behavior.  We affirm.   FACTS

The present action began when the State filed a petition requesting that respondent be evaluated and adjudicated a sexually violent person and committed to the care and custody of the Department of Human Services (DHS).  See 725 ILCS 207/15 (West 1998).  The petition alleged that, in 1997, respondent had been convicted of criminal sexual assault and sentenced to four years’ imprisonment and, in 1980, respondent had pleaded guilty to two counts of indecent liberties with a minor and had received four years' probation.  Respondent was scheduled for mandatory supervised release on May 13, 1999, for the 1997 offense.  The petition alleged that respondent had been diagnosed as suffering from pedophilia, a "sexually attracted to females, nonexclusive type," and "alcohol abuse in a controlled environment" and that these mental disorders created a substantial probability that he will engage in acts of sexual violence. 

On June 8, 1999, following a hearing, the trial court determined there was probable cause to conduct further proceedings on the State’s petition.  The trial court also ordered that respondent be transferred to the DHS for an evaluation as to whether he was a sexually violent person.  See 725 ILCS 207/30(c) (West 1998).

At the commitment trial, Sara Windle testified about the facts that led to respondent’s 1997 conviction.  Respondent sexually assaulted Windle over a nine-year period when he lived with Windle and her mother.  The abuse, which included oral and digital penetration, began when Windle was seven years old. 

The State also called Dr. Agnes Jonas and Dr. Barry Leavitt.  Dr. Jonas interviewed respondent prior to and following the probable cause hearing and diagnosed respondent as a pedophile, sexually attracted to females, nonexclusive type.  Dr. Jonas also diagnosed respondent as afflicted with alcohol abuse.  Dr. Jonas testified to the factual basis of her diagnosis and identified several factors suggesting that respondent would commit future acts of sexual violence.  In her opinion, there was a substantial probability that respondent would commit a sexually violent offense in the future.   

Dr. Leavitt interviewed respondent following the probable cause hearing.  He diagnosed respondent as a nonexclusive, "female type" pedophile, suffering from "alcohol abuse in a controlled environment," and having a personality disorder not otherwise specified with narcissistic and antisocial personality features.  Dr. Leavitt used several recognized tests to predict respondent’s likelihood of reoffending.  Based on his interviews with respondent, respondent’s history of sexual violence, and the results of the psychological testing, Dr. Leavitt opined that respondent’s emotional or volitional capacity predisposed him to commit acts of sexual violence.  Dr. Leavitt concluded that a substantial probability existed that respondent would commit another sexually violent crime in the future.

Respondent’s expert, Dr. Larry Davis, interviewed respondent for two hours and reviewed Dr. Leavitt's and Dr. Jonas's reports.  Davis agreed that respondent was a pedophile but concluded that, to a reasonable degree of medical certainty, there was not a substantial probability that respondent would reoffend.  Dr. Davis based this opinion on the fact that respondent demonstrated a pattern of molestation that slowly developed only in the intimate environment of a family setting.  Because respondent was now 52 years old, his sex drive was diminished, and he most likely would have a relationship with a woman his own age who would not have young girls in the home, Dr. Davis concluded that there was not a substantial probability of reoffending.  Dr. Davis suggested that a parole term could include a condition that respondent not reside in a home with prepubescent girls.

During closing, the trial court asked the prosecutor to address Dr. Davis's premise that living arrangements and age would render respondent less than substantially likely to reoffend.  While admitting that a possible term for parole could include a condition that respondent not reside with prepubescent girls, the prosecutor argued that any parole term was limited and that women in their late forties can bear children or have custody of grandchildren.

The trial court adjudicated respondent to be a sexually violent person and ordered respondent committed to an institution in a secure facility for treatment.  Respondent timely appeals.

ANALYSIS

I. Sufficiency of the Evidence

Respondent first contends on appeal that the State failed to prove beyond a reasonable doubt that he was a sexually violent person.
  R
espondent asserts that, because Dr. Jonas was not qualified to testify as an expert and Dr. Leavitt's testimony was not credible, the State has failed to sustain its burden of proof.   Regarding Dr. Jonas's allegedly inadequate qualifications, respondent admits that his counsel stipulated to Dr. Jonas's qualifications.  However, he argues that his counsel was ineffective by agreeing to the stipulation.  Respondent bases this claim on the administrative rules implementing the Commitment Act that provides the standards for qualifying as an expert.

To prevail on a claim of ineffective assistance of counsel, the claimant must prove both that counsel's conduct fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different.  
Strickland
 v. Washington
, 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68
 (1984);
 
People v. Howery
, 178 Ill. 2d 1, 51 (1997).  
 

Expert testimony is admissible at trial when the expert has knowledge or experience not common to a layperson and this knowledge or experience would aid the trier of fact in determining the facts at issue.  
People v. Miles
, 217 Ill. App. 3d 393, 404 (1991)
.
  The admission of expert testimony is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion.  
Miles
, 217 Ill. App. 3d at 403.

Section 299.220 of the Illinois Administrative Code requires that an evaluator must be a physician, psychiatrist, or clinical psychologist who has a minimum of two years' experience providing sex offender evaluation and treatment.  59 Ill. Adm. Code §299.220 (1998).
  Here, the record establishes that Dr. Jonas had been involved in the treatment and evaluation of juvenile sex offenders from 1985 until 1990.  In addition, she has specialized in the evaluation of sex offenders under the Commitment Act since 1997.  At the time of trial, Dr. Jonas had testified as an expert in at least 17 sexually violent person cases.  The trial court found that Dr. Jonas qualified as an expert witness.  We agree with the trial court's conclusion.  
Because 
Dr. Jonas was a qualified expert witness, 
any objection to her qualifications as an expert would have been unavailing.
 
 Therefore, respondent has failed to show that his trial counsel was ineffective.

As to r
espondent's argument regarding Dr. Leavitt, respondent claims that Dr. Leavitt's reliance on the Rapid Risk Assessment for Sexual Recidivism (RRASR) test was not credible.  During trial, Dr. Leavitt concluded that under the RRASR test respondent scored positively for having a history of prior sexual offenses and for having committed a sexual offense against Windle, whom Dr. Leavitt described as an "extrafamilial" victim.  Respondent claims that Windle was, in reality, more like a family member and therefore should have been termed an "intrafamilial" victim.  Respondent concludes that, because Windle was an intrafamilial victim, Dr. Leavitt could not give respondent a positive score for having committed a sexual offense with an extrafamilial victim.  Because respondent can only be charged with a positive score for one factor, respondent asserts that Dr. Leavitt's reliance on the RRSOR test is not credible.  Respondent further claims that the Hanson-Bussier assessment test relied on by Dr. Leavitt supports Dr. Davis's assumption that respondent had only a 10% chance of reoffending in the next five years.  Respondent asserts that, although the phrase "substantially probable" has not been defined, the State must prove something appreciably higher than a 10% chance of reoffending within the next five years.  Parenthetically,
 we note that "substantially probable" is defined as "much more likely than not."  
In re Detention of Bailey
, 317 Ill. App. 3d 1072, 1086 (2000).
  We find respondent's claims are
 misguided and without merit.  

Regardless of whether Windle is described as an intrafamilial victim or whether "substantially probable" is defined as much more likely than not, respondent's claims simply attack the weight of the evidence and the credibility of the witnesses.  In reviewing a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant.  
People v. Smith
, 177 Ill. 2d 53, 73 (1997).  Rather, the trier of fact is charged with evaluating the credibility of the witnesses, resolving conflicts in the evidence, and deciding what reasonable inferences to draw from the evidence.  
People v. Daniel
, 311 Ill. App. 3d 276, 282 (2000). 

Moreover
, Dr. Leavitt did not rely solely on the assessment tests in concluding that respondent suffered from a mental disorder that made it substantially probable that he will commit another sexually violent act.  He integrated several different risk assessment test materials, test reports, respondent's records, and the information and facts regarding respondent's personal and criminal history in arriving at his conclusion. 
 Although respondent's expert, Dr. Davis, did not agree with the ultimate conclusion drawn by the State's experts, we will not disturb the findings of the trier of fact because he was in the best position to weigh the testimony of the experts and assess their credibility.
  
 On review, we ask only whether, after viewing all the evidence in the light most favorable to the State, any rational trier of fact could find that the elements of the offense have been proved beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985); 
Daniel
, 311 Ill. App. 3d at 282.
 
 Under the Commitment Act, in order to prove respondent is a sexually violent person, the State is required to prove that he (1) had been convicted of a sexually violent offense; (2) would be discharged from the Department of Corrections within 90 days
; (3) has a mental disorder; and (4) is dangerous to others because the mental disorder creates a substantial probability that he will engage in future acts of sexual violence.  725 ILCS 207/15 (West 1998).
  In this case, two experts testified that respondent has a mental disorder that makes it substantially probable that he will commit sexually violent acts in the future.  Both relied on psychological testing, the case record, police reports, mental health evaluations, presentence reports, and interviews with respondent. 
 We find that any rational trier of fact could have found beyond a reasonable doubt that respondent is a sexually violent person as defined by the Commitment Act.

II. Dispositional Hearing

Respondent next contends that the trial court erred in ordering him committed to institutional care in a secure facility.  Respondent claims that the trial court should have continued the dispositional hearing to obtain more information on suitable placement and that the trial court had insufficient information to order respondent committed to institutional care.  The State argues the statute is clear that the trial court may continue the dispositional hearing if the court lacks sufficient evidence to determine immediately following trial whether to commit respondent to a secure facility or allow him conditional release.  The State further asserts that the trial court had sufficient information to commit respondent to institutional care immediately following trial.  We agree with the State.

Section 40(a) of the Commitment Act provides that, when a person is found to be sexually violent, the court "shall order the person to be committed to the custody of the [DHS]."  725 ILCS 207/40(a) (West 1998).  Section 40(b)(2) provides that the commitment order shall specify either institutional care in a secure facility or conditional release.  725 ILCS 207/40(b)(2) (West 1998). 
 In determining placement, the court may consider certain matters, including the nature and circumstances of the person's behavior, the person's mental history and present mental condition, where the person will live and work, and what arrangements are available to ensure that the person has access to and will participate in necessary treatment.  725 ILCS 207/40(b)(2) (West 1998).
  Section 40(b)(1) provides that the trial court "may adjourn the hearing" to obtain additional information if the court "lacks sufficient information to make the determination required by paragraph (b)(2) of this Section immediately after trial."  725 ILCS 207/40(b)(1) (West 1998).
   

We note that neither party has provided this court with 
In re Detention of Varner
, 315 Ill. App. 3d 626, 639 (2000)
, wherein we recently rejected an argument similar to respondent's.  W
e held that t
he Commitment Act "clearly gives the trial court discretion to continue the dispositional hearing to obtain additional information," which will not be reversed absent an abuse of discretion.  
Varner
, 315 Ill. App. 3d at 639.
  While our colleagues on the Appellate Court
, Third District, in
 
People v. Winterhalter
, 313 Ill. App. 3d 972, 981 (2000), held that the trial court is required to conduct a hearing before entering its commitment order, we are not bound by the decisions of the courts of other appellate
 districts if a determination of our own is contrary to that of another district.  
Stec v. Oak Park Police Pension Board
, 204 Ill. App. 3d 556, 563 (1990). 

Here, the trial court clearly indicated that it had sufficient information to make its decision.
  Based on the record, respondent has not demonstrated, and we do not find, that the trial court abused its discretion in failing to continue the dispositional hearing to obtain more information on suitable placement.  

Nor do we find that the trial court erred in finding that respondent is not an appropriate candidate for conditional release.  Both Dr. Jonas and Dr. Leavitt testified that there was a substantial probability that respondent will engage in further acts of sexual violence as a result of his mental disorder.  Additionally, the record indicates respondent never participated in treatment for his disorder while incarcerated.  Given the testimony of the three expert witnesses, the nature and circumstances of respondent's behavior, his prior and present mental condition, and what arrangements were available to ensure respondent has access to and will participate in necessary treatment
, we cannot say that the trial court erred in committing respondent to institutional care.

III. Constitutional Challenge

Respondent last contends that the Commitment Act is unconstitutional in the absence of a specific finding that respondent has a mental disorder affecting his volitional capacity.  The trial court found that respondent "has a mental disorder which in his case is either a congenital or acquired condition affecting emotional or volitional capacity that predisposes him to engage in acts of sexual violence."  Respondent claims that it is not clear whether the trial judge's conclusion that respondent was a sexually violent person would be the same had the judge strictly been required to find a lack of volitional control.  
Respondent relies on 
In re Care & Treatment of Crane
,
 269 Kan. 578, 7 P.3d 285 (2000), in support.  

In 
Crane
, the defendant argued that the Kansas Sexually Violent Predator Act (Kansas Act) (Kan. Stat. Ann. 59--29a01 
et seq.
 (1999 Supp.), as applied to him, was unconstitutional because the jury was not instructed that he was unable to control his behavior.  To answer the defendant's question, the 
Crane
 court had to revisit 
Kansas v. Hendricks
, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997).  In 
Hendricks
, the Supreme Court upheld the Kansas Act
 as constitutional because it satisfied the constitutional requirements of a finding of future dangerousness linked to the existence of a mental abnormality or personality disorder that makes it difficult for the person to control his dangerous behavior.  
Hendricks
, 521 U.S. at 358, 138 L. Ed.2d at 512-13, 117 S. Ct. at 2080; see 
In re Detention of Samuelson
, 189 Ill. 2d 548 (2000)(the Commitment Act is constitutional under 
Hendricks
 because the Commitment Act and the Kansas Act are
 similar).
  The 
Crane
 court understood 
Hendricks
 to require a finding that the defendant cannot control his dangerous behavior.  
Crane
, 269 Kan. at 585-86, 7 P.3d at 290.  Because the defendant in 
Crane
 suffered from a "personality disorder," which by definition under the Kansas Act does not include volitional impairment, the court reasoned that the Kansas Act was unconstitutional as applied.  
 In the wake of this court's recent decision in 
In re Detention of Trevino
, 317 Ill. App. 3d 324 (2000)
,
 we must reject respondent's argument that the trial court must specifically find that respondent has a mental disorder affecting his volitional capacity.
  Again, we note the failure of both parties to provide this court with and discuss the implications of our recent ruling. 

In 
Trevino
, as in 
Crane
, the respondent was diagnosed as suffering from exhibitionism and personality disorder
.
 
 On appeal, the respondent argued that his commitment under the Commitment Act was unconstitutional because the trial court did not instruct the jury to make a specific finding of fact on whether he lacked volitional control over his violent criminal behavior because of his mental disorder.  
Trevino
, 317 Ill. App. 3d at 335.  Similar to the 
Crane
 court, we relied on 
Hendricks
, 521 U.S. at 357, 138 L. Ed. 2d at 512, 117 S. Ct. at 2079-80
. 
 
We discerned no significant difference between the statutory language contained in the Kansas Act and the language in the Commitment Act.  
Trevino
, 317 Ill. App. 3d at 336.
  We noted that the statutory language of the Commitment Act obligated
 the State to prove that the respondent was dangerous because he suffered from a mental disorder that made it substantially probable that he would engage in acts of sexual abuse.  See 725 ILCS 207/5(f) (West 1998).
  Unlike in 
Crane
, however, we believed that, in order to make such a finding, 
the jury is necessarily required to conclude that the respondent lacked volitional control over his mental disorder.  
Trevino
, 317 Ill. App. 3d at 336. 
 We therefore rejected the respondent's assertion that the trier of fact is required to make additional findings that are not already expressly required by the statute.  
Trevino
, 317 Ill. App. 3d at 336.  

We are not persuaded by the reasoning in 
Crane
 and continue to adhere to our decision in 
Trevino
.  Here, the trier of fact found respondent to be dangerous because he suffered from a mental disorder that made it substantially probable that he would engage in acts of sexual abuse.  Such a finding necessarily encompasses the conclusion that respondent lacked volitional control. 
 Accordingly, we reject the argument that the trier of fact must specifically find that it based its decision upon respondent's lack of volitional capacity.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON, P.J., and BOWMAN, J., concur.