# Illinois Official Reports

## Appellate Court

---

### *In re Commitment of Tittelbach*, 2015 IL App (2d) 140392

---

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF JOHN TITTELBACH (The People of the State of Illinois, Petitioner-Appellee, v. John Tittelbach, Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-14-0392 |
| Filed | February 4, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order denying respondent's petition filed under section 2-1401 of the Code of Civil Procedure seeking relief from an order recommitting him to the Department of Human Services pursuant to a 1999 judgment adjudicating him a sexually violent person was affirmed, notwithstanding revisions to the Diagnostic and Statistical Manual of Mental Disorders used by the clinical psychologist who evaluated respondent that respondent claimed supported his release from commitment, since an examination of the revisions by the appellate court supported the court's rejection of respondent's argument that the revisions meant that respondent no longer had a mental disorder. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 99-MR-285; the Hon. Terence M. Sheen, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

William G. Worobec, of Law Office of William G. Worobec, P.C., of Wheaton, for appellant.

Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Jean M. Godfrey, Assistant Attorneys General, of counsel), for the People.

Panel

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, John Tittelbach, appeals a judgment denying his petition for relief, under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), from an order recommitting him to the custody of the Department of Human Services (DHS). The recommitment order was based on a 1999 judgment that adjudicated respondent a sexually violent person (SVP) as defined by the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 1998)) and committed him to a treatment detention facility (TDF) under the custody of DHS. We affirm.

¶ 2    In 1980, respondent pleaded guilty to two counts of indecent liberties with a child (Ill. Rev. Stat. 1979, ch. 38, ¶ 11-4(a)), committed against his then-stepdaughters. He was sentenced to four years' probation. In 1997, a jury convicted him of one count of criminal sexual assault (720 ILCS 5/12-13(a)(3) (West 1994)), committed against his girlfriend's minor daughter. He was sentenced to four years' imprisonment.

¶ 3    On October 1, 1999, shortly after respondent was released from prison, he was adjudicated an SVP and committed. At all pertinent times, the Act has defined an SVP as "a person who has been convicted of a sexually violent offense *** and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 1998). Respondent appealed the judgment. This court affirmed. *In re Detention of Tittlebach*,[1] 324 Ill. App. 3d 6 (2001).

¶ 4    On January 22, 2010, respondent petitioned for conditional release under section 60 of the Act (725 ILCS 207/60 (West 2010)). On March 29, 2012, based on a hearing at which the court heard testimony from clinical psychologists David Suire (for the State) and William Hillman (for respondent), the court denied the petition. The court held that the State proved that respondent was still an SVP and had not made sufficient progress for conditional release.

---

[1]Respondent spells his name "Tittelbach."

¶ 5    The court explained that it had, in pertinent respects, credited Suire's testimony over that of Hillman. As pertinent to this appeal, Suire had testified as follows. Respondent's two convictions of indecent liberties with a child were based on acts that he had committed against his stepdaughters when one was 12 and the other was 13, but the victims reported that he had steadily abused them since they were 5 and 7, respectively. Respondent's conviction of sexually assaulting his girlfriend's daughter was based on acts he committed in 1985 and 1986, but he had sexual contact with her into 1994, and she "estimated conservatively that he had 'offended against her' 600 times." *In re Commitment of Tittelbach*, 2013 IL App (2d) 120463-U, ¶ 7.

¶ 6    Suire testified further that he had evaluated respondent yearly since 2006. In 2011, he diagnosed respondent with three mental disorders, as described in the Diagnostic and Statistical Manual of Mental Disorders, 4th edition, Text Revision (American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision, DSM-IV-TR (2000)) (DSM-IV-TR) that predisposed him to engage in future sexual violence: pedophilia; alcohol abuse; and personality disorder not otherwise specified with antisocial and narcissistic features. *Tittelbach*, 2013 IL App (2d) 120463-U, ¶ 8. According to Suire, respondent was substantially likely to reoffend if not confined (*id.* ¶ 11), and he had not made sufficient progress to be released (*id.* ¶ 7). In 2013, this court affirmed. We held in part that the State had proved that respondent had not made sufficient progress to be released. *Id.* ¶ 36.

¶ 7    Meanwhile, on July 3, 2012, the State moved to reexamine respondent and continue his commitment. The petition attached Suire's report of June 20, 2012, which concluded that respondent still suffered from one or more mental disorders that affected his emotional or volitional capacity and predisposed him to engage in acts of sexual violence; that these mental disorders made it substantially probable that he would engage in more acts of sexual violence; and that he had not made sufficient progress to be released. Suire diagnosed respondent with mental disorders "from the [DSM-IV-TR]," including "302.2 Pedophilia, Sexually Attracted to Females, Nonexclusive Type"; "305.00 Alcohol Abuse, in a Controlled Environment"; and "301.9 Personality Disorder, NOS, with Antisocial and Narcissistic Features." Suire explained the first mental disorder as follows:

> **"302.2 Pedophilia, Sexually Attracted to Females, Nonexclusive Type**
>
> **This diagnosis requires, over a six[-]month period, recurrent, intense sexually arousing fantasies, sexual urges or behaviors involving sexual activity with a pre-pubescent child (generally age 13 or younger). The person has acted on these urges or the sexual urges or fantasies cause marked distress or interpersonal difficulty. The person is at least 16 years old and 5 years older than the child(ren).**
>
> Mr. Tittlebach [*sic*] has been convicted of molesting at least three pre-pubescent girls over a period of more than a decade. He has reported being sexually aroused by the sight of his young step-daughters (when they were nude or scantily dressed). His predicate victim reported Mr. Tittlebach's [*sic*] penis was erect during at least one of his multiple sexual assaults of her. His actions led to his incarceration and present commitment as a Sexually Violent Person. He was at least 16 years old and more than five years older than the victim's [*sic*] of his sexual offenses." (Bold in original.)

¶ 8    Suire's report also stated as one of its "Conclusions":

"Mr. Tittlebach [*sic*] meets DSM-IV-TR criteria for Pedophilia, Sexually Attracted to Females, Nonexclusive Type; Alcohol Abuse, In a Controlled Environment; and Personality Disorder, NOS, with Antisocial and Narcissistic Features. The first of these diagnoses is a mental disorder as defined by the Act; that is, it is a congenital or acquired condition affecting his emotional or volitional capacity and predisposing him to engage in acts of sexual violence. The latter two diagnoses would not, in all cases, be mental disorders as defined by the Act but, in combination with the first diagnosis, increase his risk of sexual violence and are therefore mental disorders as defined by the [A]ct."

¶ 9 On July 24, 2012, the trial court granted the State's motion, continued respondent's commitment, and set the matter for "annual reevaluation on June 27, 2013." Respondent did not appeal. On June 24, 2013, the State moved for a periodic reexamination and a finding of no probable cause. The motion attached Suire's reexamination report, dated June 19, 2013. It noted that respondent had refused a clinical interview with Suire.

¶ 10 In the "Diagnosis" section of his report, Suire listed five "diagnoses from the American Psychiatric Association, Diagnostic and Statistical Manual, 5th Edition[, DSM-5] (2013)" (DSM-5). The first three diagnoses were identical to the first three listed in Suire's June 20, 2012, report, except that (1) Suire substituted "Pedophilic Disorder" for "Pedophilia"; and (2) "Alcohol Abuse, in a Controlled Environment," was shortened to "Alcohol Abuse." The report's explanation for "Pedophilic Disorder, Sexually Attracted to Females, Nonexclusive Type," was identical to that in the 2012 report for "Pedophilia, Sexually Attracted to Females, Nonexclusive Type." Although the name given the disorder had changed slightly, both the definition of the disorder and the reasons that Suire gave for diagnosing respondent with it were exactly the same.

¶ 11 In the "Conclusions" section of his report, Suire stated in pertinent part:

"Mr. Tittlebach [*sic*] meets DSM-[5] criteria for Pedophilic Disorder, Sexually Attracted to Females, Nonexclusive Type; Alcohol Abuse; and Personality Disorder, NOS, with Antisocial and Narcissistic Features. The first of these diagnoses is a mental disorder as defined by the Act; that is, it is a congenital or acquired condition affecting his emotional or volitional capacity and predisposing him to engage in acts of sexual violence. The latter two diagnoses would not, in all cases, be mental disorders as defined by the Act but, in combination with the first diagnosis, increase his risk of sexual violence and are therefore mental disorders as defined by the [A]ct."

We note that, except for the small change in nomenclature noted earlier, and the reference to the DSM-5 instead of the DSM-IV-TR, this paragraph is identical to the corresponding paragraph in Suire's June 20, 2012, report.

¶ 12 The hearing on the State's motion was continued several times and, on October 10, 2013, the trial court set the hearing for November 4, 2013. On November 4, 2013, before the court heard or ruled on the State's motion, respondent filed his section 2-1401 petition to vacate the judgment of July 24, 2012. The petition cited the statement in Suire's June 20, 2012, report that, of the three diagnoses upon which he had relied, only the first one, pedophilia, was *per se* a mental disorder under the Act. Therefore, the petition argued, the assumption that pedophilia is a mental disorder is crucial to any finding that respondent is an SVP. However, the petition asserted, although that assumption was proper under the DSM-IV-TR, it was no longer so under the DSM-5, which had come out in May 2013.

¶ 13    According to the petition, the DSM-5 contains revisions that make a crucial difference to whether respondent should be diagnosed with a mental disorder that could serve as a predicate for continued confinement under the Act. Respondent relied on new matter in the section entitled "Other Conditions That May Be a Focus of Clinical Attention." He cited two passages from this section. The first is the introductory paragraph, which reads:

> "This discussion covers other conditions and problems that may be a focus of clinical attention or that may otherwise affect the diagnosis, course, prognosis, or treatment of a patient's mental disorder. *** Conditions and problems in this chapter may also be included in the medical record as useful information on circumstances that may affect the patient's care, regardless of their relevance to the current visit.
>
> *The conditions and problems listed in this chapter are not mental disorders.* Their inclusion in DSM-5 is meant to draw attention to the scope of additional issues that may be encountered in routine clinical practice and to provide a systematic listing that may be useful to clinicians in documenting these issues." (Emphasis added.) DSM-5 at 715.

¶ 14    The second passage that the petition cited is the description of one of the "conditions and problems," "Child Sexual Abuse." It reads:

> "Child sexual abuse encompasses any sexual act involving a child that is intended to provide sexual gratification to a parent, caregiver, or other individual who has responsibility for the child. Sexual abuse includes activities such as fondling a child's genitals, penetration, incest, rape, sodomy, and indecent exposure. Sexual abuse also includes noncontact exploitation of a child by a parent or caregiver–for example, forcing, tricking, enticing, threatening, or pressuring a child to participate in acts for the sexual gratification of others, without direct physical contact between child and abuser." DSM-5 at 718.

¶ 15    The petition argued that (1) per the introductory paragraph, the other "conditions and problems" listed in the chapter are not mental disorders; (2) "child sexual abuse" is one of these "conditions and problems"; (3) respondent's "criminal and offending sexual history" falls squarely within the definition of "child sexual abuse," as, when he had committed his offenses, he had had responsibility for the victims; and, therefore, (4) respondent "cannot be said to suffer from a mental disorder, as dictated by the DSM-[5]." The petition contended that, because respondent no longer suffered from a mental disorder, there was no basis to confine him under the Act. The petition requested that the trial court vacate the order of July 24, 2012. Alternatively, it requested that an independent evaluator determine whether, "in light of the new DSM-[5]," respondent still had a mental disorder as defined by the Act.

¶ 16    The petition attached a copy of Suire's 2012 report in which he diagnosed respondent with, *inter alia*, pedophilia, based on the DSM-IV-TR. It did not, however, attach or refer to Suire's June 19, 2013, report, in which he diagnosed respondent with, *inter alia*, pedophilic disorder, based on the DSM-5.

¶ 17    Without hearing the State's motion to recommit respondent, the trial court continued the cause to March 25, 2014. On February 14, 2014, the State responded to the petition as follows. Whatever new matter was in the DSM-5, nothing that respondent's petition cited would preclude him from being diagnosed with a mental disorder. The revisions to the DSM were not intended to replace or repeal the diagnosis of pedophilia, which the DSM-5 still recognized but as "pedophilic disorder." Respondent's diagnosis would not change under the

updated DSM, because the diagnostic criteria for pedophilic disorder were the same as those for pedophilia, and nothing about respondent had changed. The State's response did not mention that Suire's June 19, 2013, report diagnosed respondent with pedophilic disorder, based on the DSM-5.

¶ 18 On March 25, 2014, the trial court heard arguments on respondent's section 2-1401 petition. Respondent conceded that "pedophilic disorder" as defined in the DSM-5 is identical to "pedophilia" in the DSM-IV-TR. However, he contended that the DSM-5's "new section" defines "child sexual abuse" to include his offenses; that the DSM-5's "new section" states that the conditions listed therein are not mental disorders; and that, therefore, he does not suffer from a mental disorder as defined by the current DSM. Respondent argued that, because Suire's diagnosis was based on the DSM-IV-TR, which did not exclude "child sexual abuse" as a "mental disorder," the diagnosis was outdated. The DSM-5 "clearly delineated an incest situation versus general pedophilic disorder."

¶ 19 The judge noted that the DSM-5 also states explicitly that the "child sexual abuse" category "doesn't necessarily replace the DSM[-]IV[-TR] and the conditions under there." Respondent answered that there must have been a reason that the DSM-5 "for the first time ever *** put this whole new section in under the Other Conditions and [took] so much time to separate and differentiate situations that involve incest."

¶ 20 The judge agreed with the State, concluding that "the original disorder was not changed from the DSM[-]IV[-]TR to the DSM[-][5]." Only the name had been changed; the diagnostic criteria carried over, and the DSM-V states that "it doesn't necessarily replace the DSM[-]IV[-TR] and its findings." (Respondent's attorney had provided a copy of the DSM-5, but the judge did not cite the passage to which he referred.)

¶ 21 On March 25, 2014, in a written order, the trial court denied respondent's section 2-1401 petition. The order also stated, "no early re examination [*sic*] required," and "Matter continued to May 6, 2014." On April 23, 2014, respondent filed a notice of appeal from the denial of his section 2-1401 petition. For our purposes, the record ends at this point.

¶ 22 On appeal, respondent again argues that, because the offenses fit the DSM-5's definition of "child sexual abuse," which has been excluded from the category of "mental disorders," there is no longer a basis in the Act for finding that he is an SVP. The State responds that the trial court correctly reasoned that respondent still suffers from pedophilia, now known as "pedophilic disorder," and that the DSM-5's new matter did not affect the 2012 diagnosis, given that nothing about respondent himself had changed.

¶ 23 We affirm the judgment, although we do not rely on the reasons that the trial court gave. (We review the trial court's judgment, not its reasoning, and thus we may affirm on any ground called for by the record. See *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 33.) Respondent's section 2-1401 petition is fatally flawed as a matter of law and cannot be cured by amendment. Respondent's petition is based on a legally spurious ground. Regardless of the truth of the petition's factual allegations, it must fail.

¶ 24 To obtain relief under section 2-1401 against a judgment, a petitioner must plead and prove: (1) the existence of a meritorious claim; (2) due diligence in presenting the defense or claim to the trial court in the original action; and (3) due diligence in filing the section 2-1401 petition itself. *People v. Pinkonsly*, 207 Ill. 2d 555, 565 (2003). Here, the last two elements are not at issue. However, respondent failed to satisfy the first element, the existence of a meritorious defense to the original action.

- 6 -

¶ 25    Respondent's petition was based on the allegation that, almost one year *after* the trial court entered the judgment of July 24, 2012, the DSM was revised so that his diagnosis of pedophilia, based on the DSM-IV-TR, was no longer valid. However, that simply cannot be a meritorious defense to the State's 2012 motion for a finding of no probable cause or to the judgment entered on July 24, 2012. The DSM-5 did not yet exist when the trial court entered its judgment, and the court properly relied on Suire's statement that, under the DSM as it read at the time of the judgment, respondent suffered from a mental disorder, pedophilia, that satisfied the Act's requirements for continuing his commitment as an SVP.

¶ 26    We know of no authority that enables a party to collaterally attack a judgment based on a failure of clairvoyance on the part of expert witnesses. The change in the DSM after respondent was properly adjudicated an SVP might have provided a basis to seek a discharge prospectively or to defend against a subsequent motion for recommitment. A change in the nonlegal standards on which experts base their opinions cannot be equated with a change in the law, much less a retroactive change that eliminates the clear authority that the trial court had when it entered the judgment.

¶ 27    In any event, even were respondent's interpretation of the DSM-5 somehow applicable to the 2012 judgment, we would reject it–as, it appears, did Suire. Although respondent did not acknowledge the fact in the trial court, Suire's reexamination report of 2013 implicitly rejected respondent's interpretation of the DSM-5. Suire stated that respondent's pedophilia–now relabeled "pedophilic disorder"–was indeed a mental disorder that supported continuing respondent's commitment as an SVP. Suire explicitly based his diagnosis on the DSM-5, the very authority upon which respondent now relies.

¶ 28    Moreover, we have read the pertinent portions of the DSM-5, and we reject the notion that the revisions meant that respondent, who had not changed in any significant respect since the 2012 judgment, no longer had a mental disorder. The section of the DSM-5 in which "child sexual abuse" appears does state that the conditions listed therein "are not mental disorders," but this statement must be taken in context–including the DSM-5's definition of "mental disorder." This context reveals that respondent's theory is merely semantic sleight-of-hand.

¶ 29    According to the DSM-5, "child sexual abuse" includes "any sexual *act* involving a child that is intended to provide sexual gratification to a parent, caregiver, or other individual who has responsibility for the child." (Emphasis added.) DSM-5 at 718. Thus, child sexual abuse is a type of *conduct*. According to the DSM-5:

> "A mental disorder is a *syndrome* characterized by clinically significant disturbance in an individual's cognition, emotion regulation, or behavior that reflects *a dysfunction in the psychological, biological, or developmental processes underlying mental functioning. *** Socially deviant behavior* (e.g., political, religious, or sexual) and conflicts that are primarily between the individual and society *are not mental disorders unless the deviance or conflict results from a dysfunction in the individual, as described above*." (Emphases added.) DSM-5 at 20.

Thus, "child sexual abuse" is not a "mental disorder" under the DSM-5, because child sexual abuse, *in itself*, is only a form of behavior, and the diagnosis of a mental disorder requires more than mere behavior. However, committing child sexual abuse is not inconsistent with having pedophilic disorder, just as coughing is not inconsistent with having influenza. A person who commits the overt act can also have the underlying disorder. Here, for example,

Suire concluded that respondent did not merely molest children who were in his care. He also suffered from a psychological dysfunction that caused him to undertake his deviant and illegal acts. Respondent suffered from pedophilic *disorder*, which manifested itself (in part) in his *acts* of child sexual abuse.

¶ 30 In his reply brief, respondent finally addresses the implications of Suire's 2013 report, which the State cites in its appellee brief as support for the trial court's judgment. He concedes that, in 2013, Suire diagnosed him with pedophilic disorder as defined by the DSM-5 and that this diagnosis was essentially equivalent to the diagnosis of pedophilia as defined by the DSM-IV-TR. Respondent attempts to explain this away by theorizing that, when he prepared his report, Suire did not consider the revisions in the DSM-5 and might not have been aware of them. There is no support for this theory in the record.[2]

¶ 31 For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 32 Affirmed.

---

[2]The State's brief also appends a copy of the reexamination report that Suire submitted on June 18, 2014. In this report also, Suire diagnosed respondent with pedophilic disorder, based on the same reasoning as in the 2013 report. Because the 2014 report postdated the judgment on appeal and is not part of the record, we do not rely on it. We do note, however, that respondent attempts to explain away this report in the same manner as he attempts to explain away the 2013 report and that his attempt to do so is even less plausible, given that the DSM-5 had been out for more than a year when Suire submitted the 2014 report.