# Illinois Official Reports

## Supreme Court

*In re Commitment of Fields*, 2014 IL 115542

| | |
|---|---|
| Caption in Supreme Court: | *In re* COMMITMENT OF JUSTIN FIELDS (The People of the State of Illinois, Appellant, v. Justin Fields, Appellee). |
| Docket No. | 115542 |
| Filed | May 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Statute requires a dispositional hearing after an individual is found sexually violent, and a circuit court erred in refusing to hold one and in entering a commitment order based on what had been heard at the jury trial—order properly vacated and cause remanded for evidence and argument. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Michael McHale, Judge, presiding. |
| Judgment | Affirmed and remanded with directions. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Michael M. Glick and Lindsay Beyer Payne, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>Daniel T. Coyne, Matthew M. Daniels, and Michael R. Johnson, of Law Offices of Chicago-Kent College of Law, of Chicago, for appellee. |

Justices           JUSTICE FREEMAN delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1      In March 2011 a jury found respondent Justin Fields to be a sexually violent person (SVP) under the Sexually Violent Persons Commitment Act (SVP Act or the Act) (725 ILCS 207/1 *et seq.* (West 2012)). After the circuit court of Cook County entered judgment, respondent requested (1) a date for a dispositional hearing, and (2) a pre-hearing evaluation. In denying respondent's requests, the court determined it already had sufficient information to make its dispositional ruling, based on evidence presented at trial. The court ordered respondent committed to a secure treatment and detention facility. On appeal, respondent argued that the State failed to prove beyond a reasonable doubt that he was an SVP under the Act and that the circuit court denied him his statutory right to a dispositional hearing. The appellate court affirmed the judgment that respondent was an SVP, but vacated the circuit court's commitment order and remanded the cause for a dispositional hearing. 2012 IL App (1st) 112191, ¶ 80. We allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013)), and now affirm the judgment of the appellate court.

¶ 2                                  I. BACKGROUND

¶ 3      Following his arrest in 2005, respondent pleaded guilty to aggravated criminal sexual abuse and kidnaping (Cook County case No. 05 CR 21674). The circuit court sentenced him to three years' imprisonment in the Illinois Department of Corrections (DOC). In February 2007, shortly before respondent was scheduled to begin mandatory supervised release, the State petitioned for his involuntary commitment under the SVP Act. On February 15, 2007, the circuit court ordered respondent transferred from the DOC to a detention facility approved by the Department of Human Services (DHS). The court subsequently held a hearing pursuant to section 30 of the Act, and found probable cause to believe respondent was a sexually violent person. The court appointed Dr. Lesley Kane as respondent's expert to evaluate whether he met the statutory criteria to be adjudicated an SVP.[1] A jury trial was held in March 2011.

¶ 4      At trial, the State introduced a certified copy of respondent's conviction of aggravated criminal sexual abuse in case No. 05 CR 21674 (the 2005 offense). The State also presented the expert testimony of two psychologists, Dr. Barry Leavitt and Dr. Steven Gaskell. Each expert opined that respondent suffers from the mental disorders of pedophilia and antisocial

---

[1]On Jan. 30, 2008, Dr. Kane completed an assessment and evaluation of respondent and wrote a report detailing her findings. On Oct. 27, 2008, the State deposed Dr. Kane.

personality disorder. Each expert also testified that, in his opinion, respondent is dangerous because his mental disorder of pedophilia makes it substantially probable that he will commit acts of sexual violence in the future.

¶ 5 The evidence presented at trial consisted principally of the certified copy of respondent's conviction and the experts' opinions regarding respondent's mental disorders and the probability of his committing acts of sexual violence in the future. The remainder of the experts' testimony was offered to explain the bases of their opinions. Respondent presented no evidence at trial.

¶ 6 Dr. Leavitt and Dr. Gaskell each testified that he conducted a clinical evaluation of respondent to determine whether respondent was a candidate for commitment under the SVP Act. As part of that evaluation, each expert personally interviewed respondent. The experts also reviewed relevant records and documents, including respondent's DOC master file.[2]

¶ 7 Each expert testified he found the facts and circumstances of respondent's criminal history relevant in forming his opinions in this case. Both experts cited, as an example, respondent's conviction for aggravated criminal sexual abuse and kidnaping (05 CR 21674), which arose from an incident that took place in August 2005 when respondent was about 20 years old. Records pertaining to that offense indicate respondent offered to buy gym shoes for a nine-year-old boy he knew from his neighborhood. The child entered respondent's car, and respondent drove to an apartment building. Respondent took the child into a vacant apartment, laid him down on the floor, placed his hands inside the child's pants, and began to squeeze and fondle the child's genitals. The child asked respondent to stop, but respondent refused until the child began to cry. Respondent then took the child to a gas station and told him to walk home. Following his arrest, respondent reportedly gave a handwritten statement confessing to the sexually abusive act, as well as to experiencing sexual arousal from it.

¶ 8 The experts also considered an earlier offense involving another nine-year-old boy, which took place in May 2000 when respondent was about 15 years old. The child was riding on the back of respondent's bicycle when respondent rode the bicycle into an alley, reached around and touched the child's genitals through his sweat pants. The child reported the incident to his mother that same day. Respondent was initially arrested for criminal sexual abuse, and the offense was classified as a sex offense. However, records indicated that after respondent was arrested, the victim's mother asked that a lesser charge be brought against respondent, as long as he pursued counseling. Respondent ultimately pleaded guilty to simple battery and was sentenced to a term of probation.

¶ 9 In testifying as to the significance of respondent's 2000 and 2005 offenses, both psychologists noted that the victim in each case was a nine-year-old boy and that there appeared to be some escalation from the first offense to the second. With respect to the escalation, Dr. Gaskell explained that while the first offense appeared to be merely opportunistic, the second involved manipulation to get the child alone in the apartment.

---

[2]A master file includes items such as disciplinary reports and medical and psychiatric evaluations, and may include criminal history reports as well as details regarding the crime for which the individual is currently incarcerated.

¶ 10    The experts also found respondent's behavior while in DHS custody relevant in forming their opinions. Dr. Leavitt noted that, since his admission to the DHS facility in 2007, respondent had exhibited many behavioral problems consistent with an antisocial attitude, and had received numerous citations for rule violations, insolence, threats, intimidation, and assault. Dr. Gaskell described some of respondent's major rule violations, including a fight with another resident that involved a form of premeditation. "[Respondent] had told staff afterwards that he had been planning that for some time. And that he hit the person in the face seven times and he enjoyed doing that."

¶ 11    Both Dr. Leavitt and Dr. Gaskell emphasized two major incidents that occurred while respondent was in DHS custody. First, in 2009, DHS staff found a drawing of a nude child with a male figure standing over him in respondent's laundry. Respondent was cited for possessing the drawing. Second, in 2010, respondent was investigated for the creation and distribution to other facility residents of what appeared to be pornographic materials. Respondent was ultimately cited for producing a DVD containing images of young children that had been enlarged to focus on the children's mouths, genitals, and buttocks.

¶ 12    Dr. Leavitt explained that this 2010 infraction was critically important in understanding the overall nature of respondent's psychological and sexual problems. The 2010 incident provided evidence of respondent's persistent preoccupation with young male children. It also showed that, even in a structured treatment setting, respondent still committed the misconduct.

¶ 13    The experts also testified there was no evidence that respondent engaged in any sex offender treatment in a community setting or in the DOC. While in the DHS facility, respondent participated in treatment sessions "for a very brief period of time earlier in his stay," Dr. Leavitt stated. According to Dr. Gaskell, respondent participated in sex offender treatment "for one day" at the DHS facility. Respondent told Dr. Leavitt that sex offender treatment would be a waste of respondent's time, but added that if it were required, he would do it.

¶ 14    The experts also described their risk assessments of respondent in determining the likelihood of his committing a future sexually violent offense. Using an adjusted actuarial approach, both experts first concluded respondent fell into the high risk category for each of the actuarial instruments applied. The next step was to adjust the actuarially estimated risk depending on the existence of dynamic risk factors or protective factors. Dr. Leavitt identified four dynamic risk factors raising respondent's risk of re-offending: (1) sexual regulation deficits; (2) significant interpersonal functioning problems; (3) general regulation deficits; and (4) long-standing history of criminal propensities. Dr. Gaskell found five dynamic risk factors that applied to respondent: (1) sexual interest in children; (2) antisocial personality disorder; (3) employment instability; (4) early onset of sexual offending; and (5) separation from parents. Each expert considered protective factors that would lower an individual's risk, but found none applied to respondent. Each expert opined that it was substantially probable that respondent would commit future acts of sexual violence.

¶ 15    The jury found respondent to be an SVP under the Act, and the circuit court ordered respondent committed to a secure treatment and detention facility under DHS custody.

¶ 16        The appellate court affirmed the circuit court's judgment that respondent was an SVP, but vacated the court's commitment order, concluding "the trial court erred by not holding a hearing to afford respondent the opportunity to introduce testimony and evidence as part of the dispositional phase." 2012 IL App (1st) 112191, ¶ 80. The appellate court remanded the cause to the circuit court for a dispositional hearing. *Id.*

¶ 17                                    II. ANALYSIS

¶ 18        The State appeals, challenging the appellate court's judgment that respondent was denied his right to a dispositional hearing under the Act. Respondent seeks cross-relief, contending the State failed to prove beyond a reasonable doubt that he is an SVP. We first consider respondent's cross-appeal regarding the sufficiency of the evidence.

¶ 19                          A. Sufficiency of the Evidence

¶ 20        When reviewing claims challenging the sufficiency of the evidence, we consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could find the elements proved beyond a reasonable doubt. *In re Detention of Welsh*, 393 Ill. App. 3d 431, 454 (2009); *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 598 (2007). To establish that respondent was an SVP, the State had to prove beyond a reasonable doubt that (1) respondent was convicted of a sexually violent offense; (2) he has a mental disorder; and (3) the mental disorder makes it substantially probable that he will engage in acts of sexual violence. 725 ILCS 207/5(f), 35(d) (West 2012); *Welsh*, 393 Ill. App. 3d at 454.

¶ 21        Respondent does not dispute that he was convicted of a sexually violent offense. He argues only that the State failed to establish that he has a mental disorder, and thus failed to meet its burden of proof on the second and third elements required for an SVP finding.

¶ 22        In explaining their conclusions that respondent suffers from a mental disorder, the State's experts, Dr. Leavitt and Dr. Gaskell, both testified they used the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR), an authoritative manual in their field, in evaluating respondent. The DSM-IV-TR requires the following for a diagnosis of pedophilia: (1) evidence of recurrent, intense sexually arousing fantasies, urges or behaviors involving sexual activity with a pre-pubescent child, occurring over a period of at least six months; (2) the person has acted on these sexual urges, or the sexual urges or fantasies cause the person marked distress or interpersonal difficulties; (3) the person is at least age 16 years and at least 5 years older than the victim or victims. Dr. Leavitt and Dr. Gaskell testified that the "16 years of age" requirement refers to the age of the person at the time of *diagnosis*, not at the time of each pedophilic-type act that forms the basis for the diagnosis.

¶ 23        Respondent argues, contrary to the State, that the individual must be at least 16 years of age at the time of each incident that forms the basis for the diagnosis of pedophilia. Respondent notes that both Dr. Leavitt and Dr. Gaskell relied on two incidents, a 2000 conviction and a 2005 conviction, to satisfy the first pedophilia criterion, that the sexual fantasies, urges or behaviors occurred "over a period of at least 6 months." Both doctors testified that respondent was 15 years and 8 months old at the time of the 2000 incident. Respondent asserts: "Because

- 5 -

[he] was under the requisite age to qualify for a diagnosis of pedophilia, the doctor[s'] diagnoses are invalid."

¶ 24    Respondent's argument focuses on the 16-years-of-age criterion for a pedophilia diagnosis. According to respondent, because he "was under the requisite age to qualify for a diagnosis of pedophilia" at the time of the 2000 offense, the State failed to establish that he has a mental disorder. In respondent's view, because that diagnosis failed, the State necessarily failed to satisfy the second and third elements of an SVP finding, that the respondent has a mental disorder, and that the mental disorder makes it substantially probable that respondent will engage in acts of sexual violence.

¶ 25    We disagree. In their testimony at trial, Dr. Leavitt and Dr. Gaskell discussed their interpretations of the DSM-IV-TR, explaining why respondent's offense in 2000, when he was 15 years and 8 months old, should be considered under the DSM-IV-TR criteria. Dr. Leavitt noted, for example, that the DSM-IV-TR itself states that the onset of pedophilia often takes place in adolescence. On cross-examination, Dr. Leavitt further explained that, for diagnostic purposes, the exact age of onset of the behavior is not crucial. What is important is the age difference between the person and the victim "and the fact that there's some continuity [in the behavior] from the early onset to present behavior, at the time when you're making the diagnosis."

¶ 26    Dr. Gaskell also testified that respondent met the DSM-IV-TR criteria for pedophilia because his behavior began at age 15 years and 8 months and continued for a period of over five years. On cross-examination, Dr. Gaskell explained that, once he learned that respondent was under 16 at the time of his 2000 offense,[3] he consulted the text portion of the DSM-IV-TR—which describes the diagnosis in more detail than the criteria portion—to determine whether the 2000 offense should be considered. Based on his review of the text portion of the DSM-IV-TR, Dr. Gaskell concluded that the 16-years-of-age requirement referred to the age of the individual at diagnosis, because the text portion specifically discussed onset of the condition in adolescence.

¶ 27    We conclude that, notwithstanding respondent's protestations to the contrary, his argument here is essentially an attack on the witnesses' credibility. As the appellate court below stated, "[t]he jury, as the trier of fact, was free to determine the credibility of the State's witnesses in considering whether the State proffered sufficient evidence to show that respondent suffered from a mental disorder" and "the record contains sufficient, uncontroverted testimony from the

---

[3]Each expert testified that at the time of his initial diagnosis of respondent, he mistakenly believed respondent was 16 at the time of his 2000 offense. Each expert later learned that respondent actually was 15 years and 8 months old at the time of that offense. On redirect, Dr. Leavitt testified this did not change his opinion in the case. On cross-examination, Dr. Gaskell acknowledged that when he first learned respondent was under 16, he was initially uncertain as to the accuracy of the diagnosis of pedophilia. However, he further testified that after consulting the text portion of the DSM-IV-TR, he concluded the diagnosis of pedophilia was appropriate.

State's witnesses" for the jury to do so. 2012 IL App (1st) 112191, ¶ 65. We reject respondent's challenge to the sufficiency of the evidence, and affirm the appellate court's judgment that the State proved beyond a reasonable doubt that respondent is an SVP as defined by the Act.

¶ 28                                            B. Dispositional Hearing

¶ 29          The State argues the appellate court erred in vacating the circuit court's commitment order and remanding for a dispositional hearing. The State acknowledges that the Act requires a dispositional hearing, but contends the circuit court held such a hearing and acted within its discretion in denying respondent's request to adjourn the hearing. The State maintains that, under the plain language of section 40(b)(1) of the Act, the trial court does not abuse its discretion by denying a continuance of the dispositional hearing for the presentation of further evidence, unless the court lacks sufficient information to make its dispositional ruling immediately after trial. Respondent counters that the circuit court refused to hold a dispositional hearing, thus denying him his statutory right to that hearing under the Act.

¶ 30          Section 40(b)(1) of the Act provides, in pertinent part:

> "(b)(1) The court shall enter an initial commitment order under this Section pursuant to a hearing held as soon as practicable after the judgment is entered that the person who is the subject of a petition under Section 15 is a sexually violent person. If the court lacks sufficient information to make the determination required by paragraph (b)(2) of this Section immediately after trial, it may adjourn the hearing and order the Department [of Human Services] to conduct a predisposition investigation or a supplementary mental examination, or both, to assist the court in framing the commitment order." 725 ILCS 207/40(b)(1) (West 2012).

¶ 31          Section 40(b)(2) provides, in relevant part: "An order for commitment under this Section shall specify either institutional care in a secure facility *** or conditional release." 725 ILCS 207/40(b)(2) (West 2012).

¶ 32          The primary goal of construing a statute is to determine and effectuate the intent of the legislature. *People v. Amigon*, 239 Ill. 2d 71, 84 (2010). The most reliable means of accomplishing that goal is to apply the plain and ordinary meaning of the statutory language. *Id*. at 84-85. Where the language is plain and unambiguous we must apply the statute without resort to further aids of statutory construction. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). Because the construction of a statute is a question of law, our review is *de novo*. *Id*.

¶ 33          The State points to the second sentence of section 40(b)(1), which states, in essence, that if a court lacks sufficient information to make a dispositional ruling immediately after trial, the court "may adjourn the hearing" and order DHS to conduct a predisposition investigation or a supplemental mental examination. From this statutory language, the State concludes that where a respondent requests a continuation of the dispositional hearing for presentation of further evidence, the court does not abuse its discretion by denying the continuance, unless the court lacks sufficient information to make its dispositional ruling immediately after trial.

¶ 34          In its brief the State recounts its version of what took place in the case at bar:

"Immediately after entry of the jury's verdict finding respondent [to be] an SVP, respondent *asked for an adjournment of the dispositional hearing.* *** The People responded that *no adjournment was warranted* because the court had sufficient information to make its dispositional ruling at that time. *** Respondent then reiterated that he was *requesting an adjournment of the hearing* and a predisposition evaluation. *** The trial judge stated that, based upon the evidence presented at trial showing respondent's substantial pattern of sexually violent behavior, the Act permitted him to order respondent's commitment for institutional care at that time." (Emphases added.)

¶ 35    Thus, according to the State's account, (1) respondent requested an adjournment of a dispositional hearing, (2) the State responded that no adjournment was warranted and (3) respondent then repeated that he was requesting an adjournment of the hearing. Unspoken but clearly implied here is that the dispositional hearing was already in progress. If, as the State asserts, respondent requested an *adjournment* of the dispositional hearing, and the State countered that no *adjournment* was warranted, it necessarily follows (in the State's version, at least) that the hearing itself had already begun.

¶ 36    The record shows that after the jury was polled, the following occurred:

"THE COURT: Mr. Fields, based on the verdict of the jury finding you're a sexually violent person, I enter judgment on the verdict.

Mr. Coyne, what's next?

MR. COYNE [Attorney for Respondent]: I believe we have to select a date.

MS. SNOW [Assistant Attorney General]: We believe the court has enough information to make a determination as to disposition now.

THE COURT: So what's the State asking for?

MS. WELKIE [Assistant State's Attorney]: That he be civilly committed to—

THE COURT: As opposed to a dispositional hearing?

MS. WELKIE: Yes. Statute says—

MR. COYNE: We are asking for a date for dispositional hearing and a predisposition hearing evaluation.

THE COURT: Based on the evidence that I heard from the two expert witnesses, about the substantial background and pattern of behavior, I believe I am allowed statutorily to find that he now be sent for treatment. That's what I am ordering, that he go to the TDF [Treatment and Detention Facility] for treatment pursuant to statute.

MR. COYNE: We do have a witness we want to put on for dispositional hearing.

THE COURT: If we have a dispositional hearing. I think pursuant to statute I'm entitled at this stage based on what I heard, to make that determination independently. So that's what I'm going to rule.

MR. COYNE: That would be over our objection.

THE COURT: Over the Respondent's strenuous objection, that's the order."

¶ 37    The record contradicts the State's characterization of the nature of the post-verdict proceedings. First, there is no indication that respondent asked for an "adjournment" of the

dispositional hearing. Instead, counsel answered the judge's question of "What's next?" by stating: "I believe we have to select a date." The word "adjournment" was not mentioned by either respondent's counsel or the trial judge. Later, after the judge stated he was ordering that respondent "go to the TDF [treatment and detention facility] for treatment pursuant to statute," counsel simply stated: "We do have a witness we want to put on for dispositional hearing." Again, there is no mention of adjournment, or of continuance, for that matter. Moreover, immediately following counsel's statement, the court responded: "*If* we have a dispositional hearing." (Emphasis added.) The clear import of the trial judge's statement is that, at that point, a dispositional hearing had not yet begun. Adding support to this interpretation is the judge's next assertion: "I think pursuant to statute I'm entitled at this stage based on what I heard, to make that determination independently."

¶ 38 The record transcript also shows that, contrary to the State's assertion, counsel for the State never argued that no adjournment was warranted. The actual colloquy between the State and the judge demonstrates that fact:

"THE COURT: So what's the State asking for?

MS. WELKIE [Assistant State's Attorney]: That he be civilly committed to—

THE COURT: As opposed to a dispositional hearing?

MS. WELKIE: Yes. Statute says—"

¶ 39 Rather than asserting that no adjournment of the dispositional hearing was warranted, counsel for the State actually answered "yes" to the judge's inquiry whether he should make the dispositional ruling without—"as opposed to"—a dispositional hearing.

¶ 40 The record clearly establishes that respondent did not ask the court for an adjournment or a continuance of the dispositional hearing. The record also shows that, contrary to the State's assertions, no dispositional hearing occurred here. Immediately following the judge's remark "If we have a dispositional hearing," which clearly indicated no hearing had begun at that point, the judge then stated: "I think pursuant to statute I'm entitled at this stage based on what I heard, to make that determination independently. So that's what I'm going to rule." Thus, immediately after indicating that no dispositional hearing had, as yet, begun, the judge made his dispositional ruling.

¶ 41 The State cites *People v. Winterhalter*, 313 Ill. App. 3d 972 (2000), and two other cases for the proposition that denying a continuance of a dispositional hearing for further investigation is not an abuse of discretion unless the court lacks sufficient information to make its dispositional ruling immediately after trial.

¶ 42 In *Winterhalter*, the jury found the respondent was a sexually violent person. *Winterhalter*, 313 Ill. App. 3d at 975. Immediately following the verdict, the trial judge noted that a hearing needed to be held to determine whether the respondent should be ordered committed to a secure facility or allowed conditional release. *Id*. at 980. "Respondent indicated that he would prefer that the trial court wait for Dr. Leavitt to draft a report regarding his treatment recommendation prior to deciding respondent's disposition." *Id*. The trial judge indicated he felt he had enough information upon which to base his decision, and ultimately committed the respondent to a secure facility. *Id*. In affirming the judgment of the circuit court, the appellate

court concluded the respondent was not denied a dispositional hearing. *Id.* at 981. The appellate court explained:

> "Immediately following the verdict, the trial court gave respondent the opportunity to present evidence or testimony with respect to the commitment order. Respondent declined this opportunity. The attorneys on both sides argued as to what each felt would be an appropriate disposition. Under the circumstances, we disagree with respondent's contention that he was denied a dispositional hearing." *Id.*

¶ 43    The appellate court in *Winterhalter* added that, under the plain language of the Act, "the trial court may in its discretion request a predisposition investigation or supplementary mental examination if it lacks sufficient information to make its [dispositional] decision." *Id.* The court held the trial judge had sufficient evidence to conclude respondent would not have been an appropriate candidate for conditional release, and the trial court therefore "did not err in failing to request the discretionary predispositional investigation or supplementary mental examination." *Id.*

¶ 44    The State also cites *In re Detention of Tittlebach*, 324 Ill. App. 3d 6, 7, 9 (2001), where the circuit court, in a bench trial, adjudicated the respondent an SVP and ordered him committed to an institution in a secure facility for treatment. The respondent argued on appeal "that the trial court should have continued the dispositional hearing to obtain more information on suitable placement and that the trial court had insufficient information to order respondent committed to institutional care." *Id.* at 12. In rejecting that argument, the appellate court agreed with the State that, under the statute, a trial court may continue the dispositional hearing if the court lacks sufficient evidence to determine immediately following trial whether to commit the respondent to a secure facility or allow him conditional release. *Id.* The appellate court also agreed with the State that "the trial court [in that case] had sufficient information to commit respondent to institutional care immediately following trial." *Id.* The appellate court in *Tittlebach* held that the trial court did not abuse its discretion "in failing to continue the dispositional hearing to obtain more information on suitable placement." *Id.* at 13.

¶ 45    The State also points to *In re Detention of Varner*, 315 Ill. App. 3d 626, 633 (2000), where the jury found respondent to be an SVP. "Following the jury's verdict, the trial court asked the parties if they had any evidence to present regarding an appropriate placement for respondent." *Id.* Neither the State nor defense counsel presented any additional evidence. *Id.* The trial court then questioned the respondent concerning where he would live and how he would support himself if placed on a conditional release for treatment. *Id.* The respondent answered that he planned to live and work with his brother in Ohio. *Id.* The trial court concluded that no additional information was needed to enable the court to make its determination, and ordered the respondent be provided institutional care and treatment in a secure facility. *Id.*

¶ 46    On appeal, the respondent in *Varner* argued "the trial court should have, *sua sponte*, continued the dispositional hearing to obtain more information on suitable placement and that the trial court had insufficient information to order respondent committed to institutional care." *Id.* at 638. In rejecting that argument, the appellate court observed that the Act gives the trial court discretion to continue the dispositional hearing to obtain additional information. *Id.* at

639. The appellate court concluded: "[W]e cannot say that the trial court abused its discretion in not ordering a continuance of the dispositional hearing *sua sponte*." *Id*.

¶ 47 These three decisions are inapposite to the case at bar. In all three, the respondent indicated the court should have continued the dispositional hearing. *Winterhalter*, 313 Ill. App. 3d at 980 (respondent told trial court "he would prefer that the trial court wait for Dr. Leavitt to draft a report"); *Tittlebach*, 324 Ill. App. 3d at 12 (respondent argued on appeal that trial court "should have continued the dispositional hearing to obtain more information on suitable placement"); *Varner*, 315 Ill. App. 3d at 638 (respondent argued on appeal that trial court "should have, *sua sponte*, continued the dispositional hearing to obtain more information on suitable placement"). Moreover, in two of the cases, the trial judge gave the respondent an opportunity to present evidence regarding disposition. *Winterhalter*, 313 Ill. App. 3d at 981 (immediately following the verdict, "the trial court gave respondent the opportunity to present evidence or testimony with respect to the commitment order"); *Varner*, 315 Ill. App. 3d at 633 (following the jury's verdict, "the trial court asked the parties if they had any evidence to present regarding an appropriate placement for respondent"). In the case at bar, by contrast, there was no request for a continuance of a dispositional hearing, nor did the trial judge give respondent an opportunity to present evidence or argument regarding disposition.

¶ 48 The State cites *Winterhalter*, *Tittlebach* and *Varner* for the proposition that, where the evidence at trial is sufficient to enable the court to make a dispositional ruling, the circuit court was within its discretion in denying a request for continuance, or in failing to order a continuance, of the dispositional hearing. That proposition has no relevance to the case at bar, where the record affirmatively demonstrates that there was no dispositional hearing. It is impossible to adjourn or continue a hearing that was never convened in the first instance.

¶ 49 The State acknowledges that the Act requires a dispositional hearing. Here, there was no such hearing, in clear violation of section 40(b)(1) of the Act. We affirm the judgment of the appellate court vacating the trial court's commitment order and remanding to the circuit court for a dispositional hearing.

¶ 50                               III. CONCLUSION

¶ 51 In sum, we affirm the appellate court's judgment that the State proved beyond a reasonable doubt that respondent was an SVP as defined by the Act. We also affirm the appellate court's judgment vacating the circuit court's commitment order and remanding to the circuit court for a dispositional hearing.

¶ 52 Affirmed and remanded with directions.

- 11 -