2026 IL App (4th) 251235

NO. 4-25-1235

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 29, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* COMMITMENT OF MICHAEL GUM, a Sexually Violent Person | ) ) ) | Appeal from the Circuit Court of Tazewell County |
| (The People of the State of Illinois, Petitioner-Appellee, | ) ) | No. 24MR39 |
| v. Michael Gum, Respondent-Appellant). | ) ) ) ) | Honorable Christopher R. Doscotch, Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Lannerd and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1 Respondent, Michael Gum, appeals an order committing him to receive institutional care in a secure facility pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2024)). Respondent argues that the trial court failed to hold a dispositional hearing, or at least a "meaningful" one, in violation of statutory requirements. We agree and thus vacate the commitment order and remand the cause with directions to hold a dispositional hearing. Respondent does not challenge the court's finding that he is a sexually violent person, so we affirm that aspect of the judgment.

¶ 2                                    I. BACKGROUND

¶ 3            In March 2024, shortly before respondent completed a 20-year prison sentence for predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 1998)), the State filed a petition seeking to commit him as a sexually violent person, pursuant to the Act. Respondent

waived his right to a jury trial, and the matter proceeded to a bench trial on October 14, 2025.

¶ 4        The State presented testimony from two psychologists: Dr. Amy Louck Davis and Dr. Elaine Bochenek. The doctors testified that they reviewed respondent's records, interviewed him, and administered risk assessments. Both doctors diagnosed respondent with pedophilic disorder and antisocial personality disorder. Bochenek additionally believed that respondent met the criteria for stimulant use disorder, cannabis use disorder, and unspecified alcohol use disorder. Both doctors opined that respondent was a sexually violent person.

¶ 5        As part of their evaluations, the doctors considered whether any protective factors decreased respondent's risk of committing another sex offense. One of the factors the doctors determined did not apply related to whether respondent had successfully completed sex offender treatment. There was some discussion in the testimony as to what level respondent was in his treatment program, which consists of five phases. Louck Davis initially testified on direct examination that respondent was in phase one, but she then said he had completed that phase. On cross-examination, when respondent's counsel asked Louck Davis whether she was aware that respondent had proceeded to phase two, Louck Davis answered that the last treatment records she reviewed were from June 2025, at which point respondent had been approved to move on to the second phase of the program. Nevertheless, Louck Davis testified that it would not change her opinion as to whether this protective factor applied if respondent were now in phase two, as that phase was "still very early in treatment." Bochenek likewise testified that this protective factor did not apply.

¶ 6        Respondent elected not to testify on his own behalf and did not present any evidence.

¶ 7        In her closing argument, the prosecutor asked the trial court "to grant the petition

- 2 -

of the State and find the Respondent a sexually violent person under the Illinois statute and order him to be committed to the [Department of Human Services] Treatment Detention Facility for further treatment." The court sought clarification from the prosecutor about the latter portion of her request:

"THE COURT: Okay. So you're saying *** if I find you've met your burden of proof, then you're gonna ask for a hearing on commitment today?

[THE PROSECUTOR]: It's up to the Court.

THE COURT: I know. That's what I'm saying—

[THE PROSECUTOR]: Thank you.

THE COURT:—that you've asked for that; correct?

[THE PROSECUTOR]: Yes, your Honor."

¶ 8     Respondent's counsel then presented his closing argument, contending that respondent was not a sexually violent person because the State failed to prove he was substantially likely to reoffend. One point counsel mentioned was that respondent was engaging in sex offender treatment, though there was "some issue as to what phase of treatment" he was in.

¶ 9     After taking a recess, the trial court found that respondent was a sexually violent person.

¶ 10    Immediately thereafter, the trial court turned to the topic of entering a dispositional order—*i.e.*, determining whether respondent's commitment should take the form of conditional release or institutional care in a secured facility. See 725 ILCS 207/40(b)(2) (West 2024) (providing that when a person is found to be a sexually violent person, the court must enter a commitment order specifying either conditional release or institutional care in a secure facility). The discussion focused on (1) the court's awareness that respondent was in phase two of sex

offender treatment and (2) the fact that Louck Davis had reviewed respondent's records through June 2025, even though she authored her report in May 2024. Specifically, the court engaged in the following colloquy with the attorneys:

"THE COURT: [Respondent's counsel], the State has asked that commitment be taken—which I think then that becomes more like a probable cause hearing. Is that essentially correct kind of or whether we—it's my discretion on whether I feel like I have enough information to make that determination today, but I don't know what your position is on that, [respondent's counsel], because I kind of know where he's at in terms of treatment because you've kind of proffered because it's positive that he's going through because as they indicated, the way through it is completing sex offender treatment, a program. That he's into step 2 or phase 2 based upon what you kind of proffered in your question.

[RESPONDENT'S COUNSEL]: Yeah.

THE COURT: So do you want to be heard on that issue because I feel like I have—because [Louck Davis's] last report was only [a] few months ago; correct?

[THE PROSECUTOR]: Yes.

[RESPONDENT'S COUNSEL]: June.

THE COURT: And so I don't know how much more *** would come from that *** if he has graduated based upon [Louck Davis's] testimony that you need to complete more of it, that it would matter."

Respondent's counsel said he understood the court's point. However, he proposed that "the safer position is to have a separate hearing and gather that information from [the Department of Human Services's Treatment and Detention Facility] just to verify" in which part of the second phase of

sex offender treatment respondent was currently engaged.

¶ 11    The trial court continued questioning the attorneys:

"THE COURT: And then, [prosecutor], you would know better than me, and the other case I did do it at the time, but I don't think there was any objection to it at [that] point, and it's within my discretion. Does it then become akin to a probable cause hearing on whether he should be committed—

[THE PROSECUTOR]: I think—

THE COURT:—for treatment?

[THE PROSECUTOR]: And you can order a predisposition investigation report if you think that you don't have enough evidence to move forward and they have a right to a doctor as well.

[RESPONDENT'S COUNSEL]: To me, it's akin to sort of like juvenile court where they have the adjudicatory hearing and then a dispo[sitional] hearing afterwards and then there's a report prepared and the judge does it normally in separate hearings."

¶ 12    The trial court then ruled as follows:

"THE COURT: Okay. All right. I'm gonna make a decision here. Based upon the evidence *** I have[,] *** I know that he's completed 1 and has been cooperative based upon the recency of Dr. Louck's testimony and her testimony regarding the need to complete treatment no matter where he's at in number 2 at this point where I'm at, *** I'm satisfied with committing [respondent] today without that. You can take that issue up if you want to, [respondent's counsel]—

[RESPONDENT'S COUNSEL]: Okay.

THE COURT:—but I think it's sufficient in this case. If it was like Bochenek where we're looking at back six, seven months, I *** might have more concerns regarding that where if I have had evidence here specifically that [respondent] is way beyond because literally we're only a couple months away with phase 2 that we were way beyond something like that, then I think in this case *** and it is a safer way so to say, whatever that means, [respondent's counsel], to do that, but I think also I have discretion in that regard.

And I don't want to unnecessarily do things when I feel I have sufficient evidence at this point that I would order him committed, *** and when I weigh it out, you can see where my reasoning is at based upon what Louck testified she had reviewed up-to-date since we were able to get this case to trial within decent proximity to her review. I think it was, what, May[?]

[THE PROSECUTOR]: Yes, sir. I think so.

THE COURT: I don't have the report in front of me.

[THE PROSECUTOR]: May 7th. Her date of report was May 7th.

THE COURT: So—and then within that time period there obviously would have been a time when he started the treatment. [Louck Davis] was mistaken that— without this, they wouldn't have started phase 2 or what have you or something, but obviously, you're saying he did.

Even if he did, there would have been a time frame between when she reviewed everything and then so it's only been a couple of months so that's the ruling."

The court asked respondent's counsel whether there was anything else to address. Counsel said

there was not.

¶ 13　　　　The trial court notified respondent of his right to appeal. The court invited respondent's counsel to file a motion "to reconsider on this commitment" if counsel "can get me something more than what I already have." However, the court reiterated that it had the evidence it needed "today right now to move forward" and that it did not "want to do something for the sake of being safe." The court set a hearing date for any postjudgment motion that might be filed.

¶ 14　　　　The order the trial court entered following these proceedings on October 14, 2025, was titled "SEXUALLY VIOLENT PERSON JUDGMENT AND DISPOSITIONAL ORDER." The order recited that the matter came before the court for a bench trial. The court entered judgment on its "finding that the Respondent is a Sexually Violent Person beyond a reasonable doubt." The order continued:

> "Pursuant to 725 ILCS 207/40(b)(1), this Court has sufficient information to make a determination required by consideration of the factors set forth in 725 ILCS 207/40(b)(2). Respondent is Ordered to the care, custody and control for treatment to the Department of Human Services until such time as Respondent is no longer a sexually violent person. Respondent's commitment shall be for institutional care in a secure facility."

¶ 15　　　　On November 10, 2025, respondent filed a posttrial motion. Pertinent here, he argued that the trial court erroneously denied his "request that a full dispositional hearing be held at a future date instead of conducting it in summary fashion immediately following conclusion of the bench trial."

¶ 16　　　　On November 17, 2025, the trial court held a hearing on respondent's motion. Respondent's counsel argued that the court erroneously "proceeded to a summary dispositional

hearing" immediately after the bench trial, rather than ordering a "predispositional investigation and supplementary mental examination" pursuant to section 40(b)(1) of the Act. See 725 ILCS 207/40(b)(1) (West 2024) (authorizing a court to adjourn a dispositional hearing and "order the Department [of Human Services] to conduct a predisposition investigation or a supplementary mental examination, or both," if the court lacks sufficient information to make a dispositional ruling immediately after trial). According to respondent's counsel, such reports "might have shed some light that would of [*sic*] possibly influenced the Court's decision the other way," as the State's experts were not "aware that [respondent] had progressed to phase 3" of sex offender treatment. Counsel suggested that this issue "would have been ferreted out if [an] investigation and report had been prepared predispositionally." Counsel also argued that the court made an error of law by believing that respondent was required to complete all five phases of sex offender treatment before being entitled to conditional release.

¶ 17    The prosecutor asked the trial court to deny respondent's motion. She recalled that the trial evidence showed respondent "was in the beginning stages of phase 3" and that no expert testified that respondent "had to complete the five phases of treatment before being conditionally released." Furthermore, the prosecutor argued that courts have the discretion "to proceed without a dispositional hearing," which is "what the Court did" here.

¶ 18    The trial court denied respondent's motion, explaining that it stood by its discretionary decision "to forgo any further evaluations" because Louck Davis reviewed respondent's records relatively closer to trial than in some other cases the court had handled. The court clarified that it did not believe a sexually violent person would always need to complete all five phases of treatment to be granted conditional release.

¶ 19    Respondent filed a timely notice of appeal.

II. ANALYSIS

¶ 21        On appeal, respondent argues that the trial court failed to hold a commitment hearing in compliance with section 40(b)(2) of the Act (725 ILCS 207/40(b)(2) (West 2024)). More specifically, he maintains that the court never held a dispositional hearing, or at least not a "meaningful" one. As respondent interprets the record, there was some discussion between the court and the attorneys as to whether a dispositional hearing should be held immediately, but the court ultimately entered a dispositional order without holding any hearing. Respondent identifies various topics that he says he could have testified about, had the court given him the chance. Relying primarily on *In re Commitment of Fields*, 2014 IL 115542, respondent asks us to vacate the dispositional aspect of the order entered on October 14, 2025, and remand the cause for a dispositional hearing, "with updated evaluations and reports and at which the Respondent may testify."

¶ 22        The State does not dispute that a trial court must hold a dispositional hearing. See 725 ILCS 207/40(b)(1) (West 2024) (providing that a court shall enter an initial commitment order "pursuant to a hearing"). However, the State contends that the court indeed held such hearing here and acted within its discretion by doing so immediately after finding that respondent was a sexually violent person. The State submits that *Fields* is factually distinguishable and that *In re Commitment of Butler*, 2013 IL App (1st) 113606, is more analogous authority.

¶ 23        Both parties assert that the proper standard of review is abuse of discretion. We disagree, as the dispositive issue is whether the trial court held a dispositional hearing in compliance with the Act's requirements. *De novo* review is warranted, as the court had no discretion as to whether to comply with the Act's requirements. See *Fields*, 2014 IL 115542, ¶ 32 (construing the parties' debate as to whether the trial court held a dispositional hearing as

presenting an issue of law to be reviewed *de novo*).

¶ 24        Section 40(a) of the Act (725 ILCS 207/40(a) (West 2024)) provides that if a court or jury determines that a respondent is a sexually violent person, "the court shall order the person to be committed to the custody of the Department [of Human Services] for control, care and treatment until such time as the person is no longer a sexually violent person." A court has two commitment options: conditional release or institutional care in a secure facility. 725 ILCS 207/40(b)(2) (West 2024). The Act identifies factors a court must consider when determining a proper disposition, including the nature and circumstances of the respondent's behavior, the respondent's mental history and present condition, and the arrangements available that will ensure the respondent "has access to and will participate in necessary treatment." 725 ILCS 207/40(b)(2) (West 2024).

¶ 25        The statute directs a trial court to determine the proper disposition by entering an initial commitment order "pursuant to a hearing held as soon as practicable" after a judgment is entered that the respondent is a sexually violent person. 725 ILCS 207/40(b)(1) (West 2024). However, the statute does not specify the manner of conducting that hearing. The statute merely indicates that if a court lacks sufficient information to enter a dispositional order immediately after the trial on the State's petition to commit the respondent as a sexually violent person, the court "may adjourn the hearing and order the Department [of Human Services] to conduct a predisposition investigation or a supplementary mental examination, or both, to assist the court in framing the commitment order." 725 ILCS 207/40(b)(1) (West 2024).

¶ 26        Case law interpreting the Act distinguishes between what a trial court must do and what it has the discretion to do in connection with entering a dispositional order. A trial court *must* hold a dispositional hearing. See *Fields*, 2014 IL 115542, ¶ 49 (noting that "[t]he State

- 10 -

acknowledges that the Act requires a dispositional hearing"); *In re Commitment of Williams*, 2020 IL App (3d) 180588, ¶ 13 ("The circuit court must hold a dispositional hearing before issuing a commitment order."). On the other hand, a court has discretion to determine the timing of that hearing and whether there is a need for a predisposition investigation or supplementary mental examination. See *In re Commitment of Dodge*, 2013 IL App (1st) 113603, ¶ 37 (explaining that "the Act grants the trial court discretion to immediately hold a dispositional hearing where the court believes neither a supplemental examination nor a predisposition investigation is necessary to frame the commitment order").

¶ 27        There is no prescribed method for how a dispositional hearing must proceed. In some cases, the parties elect to present testimony and evidence relevant to the dispositional decision. See 725 ILCS 207/25(c)(3) (West 2024) (providing that at hearings conducted under the Act, a respondent has the right to present and cross-examine witnesses); *In re Detention of Erbe*, 344 Ill. App. 3d 350, 359-61 (2003) (noting that the parties presented witnesses at the dispositional hearing). In other cases, a trial court may enter a dispositional order after allowing the parties to argue about the appropriate disposition. See *Williams*, 2020 IL App (3d) 180588, ¶ 8 (recounting that the trial court allowed the parties to present arguments about the proper disposition); *People v. Winterhalter*, 313 Ill. App. 3d 972, 981 (2000) (holding that a respondent received a dispositional hearing where he declined the opportunity to present evidence or testimony and his attorney made an argument about the appropriate disposition). Regardless of the precise form of the dispositional hearing, it should be "meaningful." *Dodge*, 2013 IL App (1st) 113603, ¶ 40.

¶ 28        Upon scrutinizing the record here, we hold that the trial court violated the Act's requirements by entering a dispositional order without conducting a dispositional hearing.

¶ 29        In her closing argument at the bench trial, the prosecutor argued that the State

proved the respondent was a sexually violent person. The prosecutor also asked for respondent "to be committed to the [Department of Human Services] Treatment Detention Facility for further treatment." The trial court clarified with the prosecutor that she intended to request "a hearing on commitment today" if the court found respondent was a sexually violent person. In his closing argument, respondent's counsel argued that respondent was not a sexually violent person. After taking a recess, the court found that respondent was a sexually violent person.

¶ 30 Immediately thereafter, the trial court expressed its belief that the State's commitment request "becomes more like a probable cause hearing." It is not apparent what the court meant by that, as probable cause had nothing to do with whether respondent should be committed for institutional care in a secure facility versus granted conditional release. The court also noted that it had discretion to determine whether it had enough information to make a commitment decision based on the trial evidence. The court then solicited respondent's counsel's position on "that issue"—*i.e.*, whether the trial evidence was sufficient to determine an appropriate disposition in light of the fact that Louck Davis prepared her report (or at least reviewed updated records) relatively recently and the court understood that respondent was engaged in phase two of sex offender treatment. Respondent's counsel answered that "probably the safer position is to have a separate hearing" and to gather further information to verify where respondent was in connection with his sex offender treatment. By referencing a "separate hearing," it is evident that respondent's counsel believed that the dispositional hearing had not yet commenced.

¶ 31 The trial court asked the prosecutor whether it would "become akin to a probable cause hearing on whether [respondent] should be committed" for treatment. Although it is not entirely clear why the court again mentioned "probable cause," this remark strongly suggests that the court was contemplating what a dispositional hearing held in the future might entail, rather

than conducting such hearing presently. The prosecutor responded that the court could "order a predisposition investigation report if you think that you don't have enough evidence to move forward" and that the respondent had "a right to a doctor as well." Respondent's counsel analogized the matter to a juvenile court proceeding, wherein there would be some sort of report prepared after an adjudicatory hearing and then a separate dispositional hearing. Again, counsel's reference to a separate dispositional hearing reflects his understanding that no dispositional hearing had commenced.

¶ 32    The trial court then said that it was "gonna make a decision here." The court ruled that it was "satisfied with committing [respondent] today." (We note the court did not state on the record whether the commitment would be for conditional release or institutional care in a secure facility; however, the written order provided that respondent would undergo institutional care in a secure facility.) After admonishing respondent of his appellate rights, the court invited respondent's counsel to move "to reconsider on this commitment" if counsel "can get me something more than what I already have."

¶ 33    The State interprets this record as showing that the trial court exercised its discretion "to hold the dispositional hearing immediately following trial." Respondent, by contrast, maintains there was no dispositional hearing.

¶ 34    The record compels the conclusion that the trial court never held a dispositional hearing, let alone a "meaningful" one. *Dodge*, 2013 IL App (1st) 113603, ¶ 40. Tellingly, the court did not solicit respondent's counsel's input about an appropriate disposition or ask him whether respondent had any evidence to present. See *Fields*, 2014 IL 115542, ¶ 47 (in determining that a trial court failed to hold a dispositional hearing, one of the facts the supreme court considered was that the court did not give the respondent "an opportunity to present evidence or argument

- 13 -

regarding disposition"). The court's colloquy with the attorneys shows that the court focused on whether it needed further information before entering a dispositional order. However, as explained above, a court has discretion to order a predisposition investigation or supplementary mental examination but *must* hold a dispositional hearing before entering a dispositional order. We note that the prosecutor expressly acknowledged at the hearing on respondent's posttrial motion that there had been no dispositional hearing, though she argued this was permissible ("And if the Court felt like it had enough information to proceed without a dispositional hearing, then the Court shall or may, and that's what the court did."). The failure to hold a dispositional hearing was "in clear violation of section 40(b)(1) of the Act." *Fields*, 2014 IL 115542, ¶ 49. The appropriate remedy is to vacate the commitment order and remand the cause for a dispositional hearing. See *Fields*, 2014 IL 115542, ¶ 49.

¶ 35        In defending the process attendant to the entry of the dispositional order, the State relies on the First District's opinion in *Butler*, which predated our supreme court's decision in *Fields*. In *Butler*, immediately after a jury found the respondent to be a sexually violent person, the State asked the trial court to commit the respondent to a secure facility. *Butler*, 2013 IL App (1st) 113606, ¶ 9. The respondent, in turn, "asked that the court schedule a dispositional hearing and for the opportunity to be evaluated so that the court may decide what recommendation to make to the [Department of Human Services]." *Butler*, 2013 IL App (1st) 113606, ¶ 9. "The court declined to hold a separate dispositional hearing," reasoning that the "respondent did not have a right to a dispositional hearing." *Butler*, 2013 IL App (1st) 113606, ¶¶ 9, 60. The court then committed the respondent to a secure facility, determining that it "did not lack sufficient evidence" to enter that dispositional order. *Butler*, 2013 IL App (1st) 113606, ¶ 9. In denying the respondent's posttrial motion, the court reiterated that it "need not hold a dispositional hearing," so long as it

had sufficient information to make a dispositional decision. *Butler*, 2013 IL App (1st) 113606, ¶ 60.

¶ 36    On appeal, the respondent argued that the trial court "denied him a dispositional hearing" before entering the commitment order. *Butler*, 2013 IL App (1st) 113606, ¶ 58. The appellate court acknowledged that the trial court erred by saying there was no requirement to hold a dispositional hearing. *Butler*, 2013 IL App (1st) 113606, ¶ 63. Nevertheless, the appellate court held there was no need to vacate the commitment order because (1) the respondent never indicated he had any witness or evidence that he was prevented from presenting and (2) the respondent merely requested for the matter to be continued for a supplemental examination, which was a matter within the trial court's discretion. *Butler*, 2013 IL App (1st) 113606, ¶ 64. The appellate court recognized that the trial court gave the parties only a "limited" opportunity to present arguments about the disposition. *Butler*, 2013 IL App (1st) 113606, ¶ 67. Even so, the appellate court emphasized that (1) the respondent did not raise an issue on appeal relating to his inability to present a further argument to the trial court and (2) there was no indication as to what the respondent's trial counsel would have argued, beyond the points counsel already made during the proceedings. *Butler*, 2013 IL App (1st) 113606, ¶ 68. Although the appellate court discerned no basis to vacate the commitment order, the court added that it did not "approve of the abbreviated nature of the hearing" that occurred. *Butler*, 2013 IL App (1st) 113606, ¶ 68.

¶ 37    *Butler* does not control the outcome of this appeal. *Butler* applied something akin to a harmless-error analysis, which our supreme court did not subsequently adopt in *Fields* in a situation where a trial court failed to hold a dispositional hearing. Rather, the supreme court determined that the proper remedy where a trial court fails to hold a dispositional hearing is to vacate the commitment order and remand the cause for such hearing. *Fields*, 2014 IL 115542, ¶ 49.

- 15 -

¶ 38 Moreover, the appellate court in *Butler* construed the respondent's request for a supplemental examination as a request for a continuance of the dispositional hearing, and the appellate court deemed it legally significant that the respondent made that request without telling the trial court that he intended to offer any evidence. *Butler*, 2013 IL App (1st) 113606, ¶ 64. However, in *Fields*, where the respondent's attorney likewise asked the trial court to order a predisposition evaluation before holding a dispositional hearing, the supreme court recognized that "[i]t is impossible to adjourn or continue a hearing that was never convened in the first instance." *Fields*, 2014 IL 115542, ¶¶ 36, 48. As in *Fields*, the trial court here never convened a dispositional hearing, so respondent's counsel could not have moved to adjourn or continue that hearing.

¶ 39 We recognize that after the trial court entered its dispositional ruling in *Fields*, the respondent's attorney mentioned that respondent wished to present a witness, and the trial court denied that request. *Fields*, 2014 IL 115542, ¶ 36. Here, by contrast, respondent's trial counsel never told the court that he wished to present a witness at a dispositional hearing. However, we reiterate that the supreme court in *Fields* said that it was remanding the matter for a dispositional hearing because the trial court violated the Act by never holding such hearing. See *Fields*, 2014 IL 115542, ¶ 49. The supreme court never indicated that the dispositive fact was that the respondent's attorney mentioned he wished to present a witness. At any rate, it would make little sense to deem it significant here that respondent did not ask the trial court to present a witness, as the court entered a dispositional order without expressly asking respondent's counsel whether he had any evidence or argument to present and respondent's counsel's comments do not reflect that he understood any dispositional hearing ever commenced.

¶ 40 For these reasons, *Fields*, not *Butler*, is controlling authority. We direct the trial court to hold a dispositional hearing on remand. In his brief, respondent requests an opportunity to

testify at the dispositional hearing, so the court shall allow respondent that opportunity, if he so chooses. Respondent also requests updated evaluations and reports in connection with that hearing. However, we leave that matter to the court's discretion, as there may have been further reports prepared or evaluations conducted while this matter has been on appeal. See, *e.g.*, 725 ILCS 207/55(c) (West 2024) (authorizing a trial court to order the respondent to be reexamined "at any time during the period in which the person is subject to the commitment order").

¶ 41 As respondent acknowledges in his brief, pending the entry of a new dispositional order, he remains subject to the detention order that the trial court entered in March 2024 upon finding there was cause to believe he was a sexually violent person. See 725 ILCS 207/30(a) (West 2024) (authorizing a trial court to enter a detention order before trial, which shall remain in effect until either the respondent is determined not to be a sexually violent person following a trial or a dispositional order is entered under section 40 of the Act).

¶ 42                                     III. CONCLUSION

¶ 43 For the reasons stated, we vacate the commitment order and remand the cause to the trial court with directions to hold a dispositional hearing. Respondent does not challenge the finding that he is a sexually violent person, so we affirm that aspect of the judgment.

¶ 44 Affirmed in part and vacated in part.

¶ 45 Cause remanded with directions.

*In re Commitment of Gum*, 2026 IL App (4th) 251235

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Tazewell County, No. 24-MR-39; the Hon. Christopher R. Doscotch, Judge, presiding. |
| **Attorneys for Appellant:** | Dale Thomas, of Pekin, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Katherine M. Doersch and Russell K. Benton, Assistant Attorneys General, of counsel), for the People. |