2025 IL App (1st) 232171-U

No. 1-23-2171

Order filed May 16, 2025

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 80005 |
| | ) | |
| DONALD SCOTT, | ) | Honorable |
| | ) | Nicholas Kantas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Justice Oden Johnson and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction as a sexually violent person is affirmed where there was sufficient evidence for a rational trier of fact to find defendant met the Sexually Violent Persons Commitment Act's statutory requirements beyond a reasonable doubt.

¶ 2    Defendant Donald Scott appeals his conviction as a sexually violent person as defined in the Sexually Violent Persons Commitment Act. 725 ILCS 207/15 (West 2012). On appeal, defendant contends that the State's evidence at trial was insufficient to support a jury's determination that he is a sexually violent person. For the reasons discussed below, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In September 1980, defendant Donald Scott sexually assaulted a woman in the Sauk Trail Woods. Two weeks later, he sexually assaulted a second woman in the same area. Both women were strangers to defendant. Defendant was tried and convicted of both rapes and was sentenced to 20 years' imprisonment.

¶ 5      In 1991, while on parole for the two rapes, defendant assaulted the female manager of a beauty store. He punched and kicked her even after she was unconscious. When a female friend of the manager came to the store, defendant punched her, stole her money, and sexually assaulted her. Defendant was arrested at the scene. Defendant was convicted of attempted first-degree murder, aggravated criminal sexual assault, and two counts of robbery.

¶ 6      In June 2013, the State petitioned to commit defendant as a sexually violent person under the Sexually Violent Persons Commitment Act 725 ILCS 207/1 *et seq.* (West 2012). As a result, a psychologist evaluated defendant as a possible sexually violent person. In April 2023, a jury trial was convened. The State based its case on expert testimony from Dr. Melissa Weldon-Padera, who is a psychologist and sex offender evaluator, and Dr. Richard Travis, who is a licensed clinical psychologist. The State's experts diagnosed defendant with other specified paraphilic disorder with sexual arousal to nonconsenting females with sexual sadism features (OSPD nonconsent) and other specified personality disorder with antisocial traits (OSPD antisocial). Defendant's expert, Dr. Brian Abbott, who is a licensed clinical psychologist and licensed clinical social worker, testified that the only disorder defendant had was OSPD antisocial, and it was in remission. He also testified that OSPD nonconsent was not a valid diagnosis under the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5).

¶ 7    Both sides' experts were questioned about the likelihood that defendant would engage in future acts of sexual violence if released. Both sets of experts relied on evaluation tools that used their individual assessments of defendant, defendant's record, and statistical data on reoffenders.

¶ 8    The jury found that defendant was a sexually violent person under the Act. After a post-trial hearing, the circuit court denied defendant's motions for a new trial or judgment notwithstanding the verdict and committed defendant to a secure treatment facility. This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 9                                    II. ANALYSIS

¶ 10    Under the Sexually Violent Persons Commitment Act, the State must prove beyond a reasonable doubt that the defendant has been convicted of a sexually violent offense, has a mental disorder, and "is dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in acts of sexual violence." 725 ILCS 207/15(b)(1)(A),(4),(5). Defendant contends that the State failed to show beyond a reasonable doubt that he qualified as a sexually violent person under the Act for two reasons. First, because the State failed to show he has a mental disorder as defined by the Act, and second, because the State failed to show he currently suffers from a mental disorder that makes it substantially probable that he will engage in future acts of sexual violence. Defendant does not contest that he was convicted of a sexually violent offense.

¶ 11    Defendant is challenging the sufficiency of the State's evidence. Therefore, we must review the record in the light most favorable to the State to determine if "any rational trier of fact could find the elements proved beyond a reasonable doubt." *In re Commitment of Fields*, 2014 IL 115542, ¶ 20. When assessing the sufficiency of evidence, the reviewing court should not

"substitute its judgment for that of the trier of fact regarding the credibility of the witnesses or the weight to be given the evidence." *In re Detention of White*, 2016 IL App (1st) 151187, ¶ 56.

¶ 12                                    A. Qualifying Mental Disorder

¶ 13    Defendant asserts that the State failed to demonstrate that, at the time of trial, he had a qualifying mental disorder under the Act as to both other specified paraphilic disorder nonconsent and other specified personality disorder antisocial.

¶ 14                    1. Other Specified Paraphilic Disorder (Nonconsent)

¶ 15    Defendant raises two arguments against other specified paraphilic disorder (nonconsent) as a basis for finding he is a sexually violent person. First, he argues that OSPD nonconsent is not listed in the DSM-5 and is therefore not a qualifying mental condition under the Act, and second, that even if it was, his record is entirely consistent with OSPD antisocial rather than OSPD nonconsent.

¶ 16    Under the Act, the issue is only whether the defendant has a "mental disorder." *In re Detention of Lieberman*, 2011 IL App (1st) 090796, ¶ 53. The Act does not require that the mental disorder be specifically listed in the DSM. *Id*. Illinois courts have recognized OSPD nonconsent as a qualifying condition under the Act. *In re Commitment of Sewell*, 2023 IL App (1st) 220168, ¶ 91 ("This court has held that it is appropriate to take judicial notice that OSPD nonconsent is generally accepted in the psychological community ***.").

¶ 17    The State's experts offered an explanation as to why OSPD nonconsent is a qualifying mental condition despite not being in the DSM-5. While OSPD *nonconsent* is not in the DSM-5, OSPD alone is. According to Dr. Weldon-Padera, paraphilia is a recurrent and intense sexual interest in something abnormal. It becomes a disorder when the affected person acts on the

paraphilia, causing distress to the person or harm to others. The DSM has several specified paraphilic disorders and a category for "other." According to both of the State's experts, this "other" category is for the potentially dozens of other paraphilic interests that are known to exist but are less clearly defined than the ones already specified. Dr. Weldon-Padera testified that while there is considerable literature on OSPD nonconsent, there is a lack of empirical data to separate it from "sexual sadism disorder." She explained that if the State had given a diagnosis of only other specified paraphilic disorder, that would still have been an accurate diagnosis under the DSM-5, but it would have been less precise as to what the abnormal sexual interest is. Therefore, a reasonable finder of fact could find OSPD nonconsent is a qualifying mental disorder for the Act.

¶ 18     Further, Dr. Weldon-Padera testified that "paraphilic disorders are chronic and lifelong conditions that don't just go away on their own spontaneously without some sort of treatment intervention." Since defendant had not received treatment for his condition, she concluded he was still suffering from OSPD nonconsent at the time of trial, thus satisfying the "has a mental disorder" element under the Act. 725 ILCS 207/15(b)(4).

¶ 19     In challenging the sufficiency of evidence, defendant points to Dr. Abbott's testimony in which he concluded that defendant's sexual crimes were entirely consistent with OSPD antisocial, not paraphilia. However, when examined in the light most favorable to the State, a rational finder of fact could credit Dr. Weldon-Padera over Dr. Abbott and conclude defendant has OSPD nonconsent, even though there is a professional disagreement about defendant's diagnosis.

¶ 20                   2. Other Specified Personality Disorder with Antisocial Traits

¶ 21     Defendant also challenges the sufficiency of the evidence as to his diagnosis of other specified personality disorder with antisocial traits (OSPD antisocial). First, defendant argues that

he did not have OSPD antisocial at the time of trial. Dr. Abbott testified that while defendant had OSPD antisocial in the past, it is in remission. Dr. Abbott noted that it is common for OSPD antisocial to go into remission after age 40 and pointed to the decrease in the number of behavior infractions defendant had been involved in at the treatment facility. The State's experts disagreed, pointing to defendant's record as a whole, and Dr. Weldon-Padera testified that personality disorders are "engrained and hard to treat." The State's experts noted that, as with OSPD nonconsent, defendant has not engaged in treatment for his disorders, and so his OSPD antisocial is not in remission. Ultimately, this is again a question of expert credibility. A rational finder of fact could find that the State's experts were more convincing than defendant's and conclude that defendant's OSPD antisocial was not in remission.

¶ 22     Defendant also argues that OSPD antisocial is not grounds, on its own, for commitment as a sexually violent person. This argument relies on *Foucha v. Louisiana*, 504 U.S. 71, 82-83 (1992), where the Supreme Court held that the State cannot hold someone in a mental hospital solely because they have an antisocial personality which may lead to criminal conduct. In *Foucha*, the petitioner had been found not guilty by reason of insanity but was later deemed not mentally ill, only antisocial. *Id*. at 74-75. The doctors evaluating the petitioner did not conclude that he was a danger, only that they could not "certify that he would not constitute a menace to himself or others if released." *Id*. Here, the opposite is true. The State's experts have diagnosed defendant with both OSPD nonconsent and OSPD antisocial and testified that they believe these conditions make it substantially likely that he will reoffend if released. Because OSPD nonconsent is a valid diagnosis, and a rational factfinder could conclude defendant has that condition along with OSPD antisocial, *Foucha* is inapplicable.

¶ 23 There is sufficient evidence to support a finding that the State satisfied the "mental disorder" element of the Act because a rational finder of fact could conclude beyond a reasonable doubt that defendant has OSPD nonconsent and OSPD antisocial.

¶ 24                                  B. Likelihood of Reoffending

¶ 25 Defendant argues that the State did not show his mental disorder creates a substantial probability that he will reoffend because the State's experts did not show a greater than 50 percent chance of reoffending and the best evidence shows his risk of reoffending was below thirteen percent. Under the Act, "[s]ubstantially probable means much more likely than not." *In re Commitment of Gavin*, 2024 IL App (1st) 230246, ¶ 44. Courts have been reluctant to define this standard any more concretely. *In re Detention of Hayes*, 321 Ill. App. 3d 178, 187-88 (2001) ("The question of substantial probability under the Act cannot be reduced to mere percentages."). Because we are reviewing for sufficiency of evidence, we will only reverse if "the evidence is so unreasonable, improbable, or unsatisfactory that it creates reasonable double of the defendant's guilt." *People v. Campbell*, 146 Ill. 2d 363, 375 (1992).

¶ 26 Here, the parties' experts disagreed on defendant's risk of reoffending. State's expert Dr. Travis concluded defendant was substantially likely to reoffend. He testified that defendant was in the highest risk category for reoffending and was "about four times more likely to sexually re-offend than the average sex offender." Dr. Travis reached this conclusion based on his assessment from the Static-99R and other similar assessment tools. The State's expert Dr. Weldon-Padera found the Static-99R put the risk of reoffending in the next 20 years at 44.5%. She noted that the Static-99R defines reoffending as "being formally charged or convicted of a sexual offense" and therefore understates the risk. She concluded that after combining the Static-99R result with other

test results, it was "substantially probable he will commit future acts of sexual violence." Defendant's expert Dr. Abbott also presented evidence based on the Static-99R test. Dr. Abbott's analysis concluded defendant had between a 6.4% and 12.8% chance of reoffending in the next five years. He noted that the risk of offending goes down with age, so the lower estimate was more accurate.

¶ 27    The State's two experts presented their professional opinion that defendant was likely to reoffend and the bases for why they held that opinion. During trial, the State questioned Dr. Weldon-Padera and Dr. Travis on their methodologies, and defendant had an opportunity to cross-examine them. Defendant presented evidence to the jury about the shortcomings of the State's experts' methodologies through Dr. Abbott. We cannot say no rational finder of fact would have found the State's case more convincing than defendant's nor that the State did not show defendant's mental disorder creates a substantial probability he will engage in acts of sexual violence beyond a reasonable doubt. Therefore, we cannot find the State presented insufficient evidence to deem defendant a sexually violent person under the Act.

¶ 28                              III. CONCLUSION

¶ 29    The judgment of the circuit court of Cook County is affirmed.

¶ 30    Affirmed.